817 F.2d 517
 7 Fed.R.Serv.3d 919
 Charles V. MEADOWS, George Harris,
Plaintiffs-Appellees/Cross-Appellants,
v.
The DOMINICAN REPUBLIC; and Instituto, De Auxilios Y
Viviendas, Defendants- Appellants/Cross-Appellees.
 Nos. 86-1785 and 86-1843.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 16, 1987.
Decided May 14, 1987.
 
 E.O.C. Ord, San Francisco, Cal., for plaintiffs-appellees/cross-appellants.
 Sanford Jay Rosen, San Francisco, Cal., for defendants-appellants/cross-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before HUG and ALARCON, Circuit Judges, and STEPHENS,* District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 The Dominican Republic (hereinafter Republic) and the Instituto De Auxilios Y Viviendas (hereinafter Instituto or, collectively, appellants) appeal from the denial of their motion to vacate the entry of the default judgment entered against them and the denial of their motion for reconsideration. Appellants contend that the district court lacked subject matter jurisdiction to enter a default judgment in this matter because the Republic was improperly named as a defendant. They also argue that the court lacked personal jurisdiction over the Instituto. Finally, appellants assert that the court erred in concluding their default was not the result of excusable neglect. We reject each of these contentions.
 
 PERTINENT FACTS AND PROCEDURAL HISTORY
 
 2
 The district court entered a default judgment based on a showing by the plaintiff Charles V. Meadows (hereinafter Meadows) that he was not paid a two percent commission owed to him for obtaining a $12 million loan for the Instituto. Meadows was requested to obtain the loan commitment by Dr. Marion A. Fernandez Mena (hereinafter Mena), the Secretary of the Republic and the General Administrator of the Instituto. Subsequently, plaintiff George Harris (hereinafter Harris or, collectively, appellees) contacted Sir Thomas Buxton, a lender in London, to obtain the money sought by Mena. Buxton advised Meadows and Harris that funding in the amount requested was available. Meadows then informed Mena of the terms and conditions for the loan.
 
 
 3
 Mena issued a mandate for the loan application to Meadows on September 6, 1976. The mandate was recorded in the Office of the Consulate of the United States. The letter referred to a two percent commission, although it did not specify to whom the commission was to be paid. The letter also did not indicate that any action other than performance was required of plaintiffs. In December 1976, the Instituto received a loan commitment for $12 million from Citibank Nassau's Santo Domingo branch on terms similar to those specified in the September mandate.
 
 
 4
 In February of 1977, Mena advised Meadows that the loan proceeds had arrived. Mena thanked Meadows for the arrangements and acknowledged that Meadows' commission of $240,000 was due and owing. Meadows and Harris then engaged in a series of attempts by telephone to secure the commission. They received only evasions and excuses.
 
 
 5
 Thereafter Meadows received a letter from Mena stating that the money had been received on February 14, 1977, and that the Republic wanted Meadows' assistance in securing another loan of $20,000,000 on behalf of the Instituto. No reference was made to the commission due on the previous loan.
 
 
 6
 During a later telephone conversation, Mena told Meadows that he would get a larger commission if he would obtain a second loan. Meadows told Mena he would not assist in procuring a second loan until his original commission was paid. Meadows and Harris were subsequently refused payment by Citibank of New York and by the Instituto.
 
 
 7
 Meadows attempted to obtain counsel in the Republic, but was told that it would be politically unwise for a Dominican lawyer to represent him. Meadows then retained American counsel, who traveled to the Republic in 1980 in order to discuss payment of the commission with counsel for the Instituto. Payment was refused without explanation. Meadows and Harris filed an action for breach of contract in the District Court for the Northern District of California on December 19, 1980.
 
 
 8
 On February 11, 1981, Meadows and Harris attempted to serve the Republic and the Instituto with summons and a copy of the complaint by mail addressed to the Secretary of State of the Republic and to Mena, with return receipt requested. No return receipts were received.
 
 
 9
 On April 28, 1981, they followed the same procedure and mailed the summons and a copy of the complaint to the Head of the Ministry of Foreign Affairs of the Republic and to Mena in his capacity as the Administrator General of the Instituto. Again, no return receipts were received.
 
 
 10
 On June 17, 1981, Meadows and Harris sent a letter to the United States Department of State, witnessed by the clerk of the district court, as required by 28 U.S.C. Sec. 1608(a)(4), requesting service on the Republic. On October 1, 1981, the United States Department of State informed the clerk of the court in writing that service had been effected on the Foreign Ministry of the Republic on September 10, 1981. The clerk was also advised that the Republic had been given detailed warnings of the legal consequences that would result from a failure to respond to the complaint.
 
 
 11
 The Republic and the Instituto did not respond. Default was entered November 16, 1981. Thereafter, the court dismissed the complaint sua sponte for failure to allege facts sufficient to establish personal jurisdiction over the defendants. Meadows and Harris appealed to this court. We remanded the action to the district court with instructions to permit the filing of an amended complaint. Meadows v. Dominican Republic, 720 F.2d 684 (9th Cir.1983).
 
 
 12
 Meadows and Harris filed affidavits in the district court on the jurisdictional issue. On June 1, 1984, a second default judgment was entered against the Republic and the Instituto in the amount of $240,000 plus interest.
 
 
 13
 On September 4, 1984, Meadows and Harris mailed copies of the default judgment to the Republic. The Republic's Undersecretary of Foreign Affairs forwarded a copy to the Instituto. No return receipt, however, was sent back to the plaintiffs. Meadows and Harris again served notice of the judgment on the Republic and the Instituto by mail in February 1985. The United States Department of State finally served notice of the judgment on the Secretary of Foreign Services of the Republic in March 1985. A return receipt of the February 1985 mailing was eventually received from the Instituto in April 1985.
 
 
 14
 The Republic and the Instituto filed a motion to set aside the default judgment and a motion for reconsideration. The district court found both motions to be timely, but denied them. Meadows v. Dominican Republic, 628 F.Supp. 599 (N.D.Cal.1986). The Republic and the Instituto appealed those denials, and Meadows and Harris cross-appealed the finding of timeliness.
 
 DISCUSSION
 
 15
 1. Timeliness Of Defendants' Motion To Vacate
 
 
 16
 In their cross-appeal, Meadows and Harris contend that the motion to set aside the default judgment for excusable neglect under Rule 60(b)(1)[1] should have been denied because it was untimely. A motion to vacate a default judgment for excusable neglect pursuant to Fed.R.Civ.P. 60(b)(1) must be made within one year. Fed.R.Civ.P. 60(b). Such a motion may be denied, although it was filed within the one year period, if the district court finds that the defendant was guilty of laches or unreasonable delay. 7 J. Moore & J.D. Lucas, Moore's Federal Practice, p 60.22 (2d ed. 1985); Amoco Overseas Oil v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 (2d Cir.1979); Mayfair Extension, Inc. v. Magee, 241 F.2d 453, 454 (D.C.Cir.1957). There is no time limit on a Rule 60(b)(4) motion to set aside a judgment as void. 11 C. Wright & A. Miller, Federal Practice and Procedure, Sec. 2862, Rule 60 (1973); Bookout v. Beck, 354 F.2d 823, 825 (9th Cir.1965).
 
 
 17
 The district court concluded that the motion to set aside the default under Rule 60(b)(1) was timely filed because less than one year had elapsed from the entry of the judgment, and no attempt had been made to execute on the judgment. While reasonable minds might differ in ruling on the timeliness of the motion, based on all the facts and circumstances in the record, the court's ruling was not unreasonable. The district court did not abuse its discretion in ruling that the motion was timely filed.
 
 
 18
 2. Denial Of Defendants' Motion To Vacate The Default Judgment
 
 A. Standard of Review
 
 19
 Factual findings of the district court with respect to Rule 60(b) motions are reviewed for clear error. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); Dollar Rent A Car of Washington, Inc. v. Travelers Indemnity Co., 774 F.2d 1371, 1374 (9th Cir.1985). If findings are undisputed or are not clearly erroneous, then the court's determination is reviewed for abuse of discretion. Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir.1983) (en banc) (applying abuse of discretion standard to excusable neglect finding on a Rule 60(b)(1) motion).
 
 
 20
 We have held that we will reverse such a ruling "only upon a clear showing of abuse of discretion." Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir.1985) (adding emphasis and citing Ellis v. Bhd. of Ry., Airline & Steamship Clerks, 685 F.2d 1065, 1071 (9th Cir.1982), aff'd in relevant part, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984)). This discretion is limited by three considerations. First, since Rule 60(b) is remedial in nature, it must be liberally applied. Schwab v. Bullock's Inc., 508 F.2d 353, 355 (9th Cir.1974). Second, default judgments are generally disfavored and cases should be decided on their merits. Id. Third, where defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment. Id.
 
 
 21
 A district court has the discretion to deny a Rule 60(b)(1) motion, however, if (1) the defendant's culpable conduct led to the default, (2) the defendant has no meritorious defense, or (3) the plaintiff would be prejudiced if the judgment is set aside. Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir.1985) (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir.1984) (per curiam)). If a default judgment is entered as the result of a defendant's culpable conduct, however, we need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice if the judgment were set aside. Id. at 815; Benny v. Pipes, 799 F.2d 489, 494 (9th Cir.1986).
 
 B. Culpable Conduct Or Inexcusable Neglect
 
 22
 A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer. Pena, 770 F.2d at 815; Benny, 799 F.2d at 494. Here, the Republic and the Instituto received actual notice of the complaint and intentionally declined to answer.
 
 
 23
 Appellants claim that their failure to answer was due to excusable neglect. They argue that they acted on the advice of counsel in failing to respond after receiving actual notice of the filing of the complaint. Appellants rely on an anonymous memorandum from an Advisory Commission stating that the Republic should not appear or be represented. The record shows that the person upon whose advice appellants originally claim to have relied, Pedro Tonos, the Republic's Undersecretary of Foreign Affairs, denied responsibility for the decision not to respond.
 
 
 24
 Furthermore, appellants were aware of relevant federal law. The district court found that defendants were fully informed of the legal consequences of failing to respond by the United States Department of State. The district court also found that the Republic was sufficiently sophisticated and experienced in the requirements of American law to protect its interests, based on its involvement in other actions in United States courts. See, e.g., Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1378-80 (5th Cir.1980) (Dominicana Airlines, wholly owned by the Dominican Republic, found to have engaged in commercial activities and therefore not protected by sovereign immunity).
 
 
 25
 Under the circumstances presented in the record, the district court did not abuse its discretion in finding that appellants' default was intentional, culpable, and inexcusable under Rule 60(b)(1). Because appellants' neglect was inexcusable, we need not determine whether the record shows a meritorious defense or prejudice to the appellees. Pena, 770 F.2d at 815; Benny, 799 F.2d at 494.
 
 3. The Judgment Was Not Void
 
 26
 The appellants further attack the judgment as void for want of jurisdiction. Whether a judgment is void is a question of law reviewable de novo on appeal. See, e.g., Redding Ford v. California State Bd. of Equalization, 722 F.2d 496, 497 (9th Cir.1983), cert. denied, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).
 
 A. Subject Matter Jurisdiction
 
 27
 The Republic and the Instituto claim that the district court lacked subject matter jurisdiction over this matter under the Foreign Sovereign Immunities Act, 28 U.S.C. Sec. 1330, 1602-11 (1976) (hereinafter FSIA). We disagree.
 
 
 28
 The FSIA sets forth a restrictive theory of sovereign immunity. Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 487, 103 S.Ct. 1962, 1968, 76 L.Ed.2d 81 (1983). Under the restrictive theory, "immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." Id.
 
 
 29
 The legislative history of section 1604 explains that FSIA
 
 
 30
 starts from a premise of immunity and then creates exceptions to the general principle.... Stating the basic principle in terms of immunity may be of some advantage to foreign states in doubtful cases, but, since sovereign immunity is an affirmative defense which must be specially pleaded, the burden will remain on the foreign state to produce evidence in support of its claim of immunity. Thus, evidence must be produced to establish that a foreign state or one of its subdivisions, agencies or instrumentalities is the defendant in the suit and that the plaintiff's claim relates to a public act of the foreign state--that is, an act not within the exceptions in sections 1605-1607. Once the foreign state has produced such prima facie evidence of immunity, the burden of going forward would shift to the plaintiff to produce evidence establishing that the foreign state is not entitled to immunity. The ultimate burden of proving immunity would rest with the foreign state.
 
 
 31
 H.R.Rep. No. 1487, 94th Cong., 2d sess., reprinted in 1976 Code Cong. & Ad. News 6604, 6616. See also Arango, 621 F.2d at 1378 (party claiming immunity under FSIA has burden of demonstrating that exceptions do not apply). In West v. Multibanco Comermex S.A., 807 F.2d 820 (9th Cir.1987), we stated that: "the presumption under FSIA is that actions taken by foreign states or their instrumentalities are sovereign acts and thus protected from the exercise of our jurisdiction, unless one of the enumerated exceptions of FSIA applies." Id. at 824. Thus, where, as here, the plaintiff alleges in his complaint that his claim is based on a foreign state's strictly commercial acts, the defendant must establish a prima facie case that it is a sovereign state and that the plaintiff's claim arises out of a public act. This proof establishes a presumption that the foreign state is protected by immunity. The plaintiff then has the burden of going forward with the evidence by offering proof that one of the FSIA exemptions applies. Once the plaintiff has presented this evidence, the defendant must prove its entitlement to immunity by a preponderance of the evidence. See Alberti v. Empresa Nicaraguense de la Carne, 705 F.2d 250, 255-56 (7th Cir.1983). The FSIA exemption to the defense of foreign sovereign immunity relied upon by the appellees provides in pertinent part that:
 
 
 32
 A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the action is based ... upon an act outside the territory of the United States in connection with commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
 
 
 33
 28 U.S.C. Sec. 1605(a)(2).
 
 
 34
 Appellees have presented evidence that appellants engaged in commercial activities. Appellants have failed to meet their burden of persuasion that this exception does not apply.
 
 
 35
 The term "commercial activity" applies to an agreement that might be made by a private person, notwithstanding the fact that the goods or services to be procured through the contract are to be used for a public purpose. H.R.Rep. No. 1487, at 16. A public activity is one which only a sovereign state can perform. MOL, Inc. v. Peoples Republic of Bangladesh, 736 F.2d 1326, 1328-29 (9th Cir.1984), cert. denied, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984) (termination of agreement regarding right to regulate imports and exports not a commercial activity because only a sovereign could so act).
 
 
 36
 Obtaining a loan commitment from a lender is a type of activity private persons perform. Thus, the Republic and the Instituto were engaged in a commercial transaction with Meadows and Harris.
 
 
 37
 A foreign state that engages in commercial activity may still be immune unless the action had a direct effect on a plaintiff. FSIA Sec. 1605(a)(2); Australian Gov't Aircraft Factories v. Lynne, 743 F.2d 672, 674 (9th Cir.1984).
 
 
 38
 The evidence must also show that the commercial activity caused that direct effect to occur in the United States. FSIA Sec. 1605(a)(2); Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). In Texas Trading, the Second Circuit held that where the parties agree that money owing on a contract was to be collected in the United States, the failure to pay the plaintiff creates an effect in the United States. 647 F.2d at 312-13. The district court correctly applied Texas Trading to the matter before us. Meadows, 628 F.Supp. at 604. Meadows and Harris reside in the United States. Under the agreement, the commission was to be paid in the United States. As the district court noted, the contract provided that the " 'transaction must be made through our bank ... and through your [plaintiffs'] bank.' (emphasis added)." Id. at 605. Because the effect of the foreign state's commercial activity was in the United States, the record demonstrates that appellants were immune from suit in the district court.
 
 B. Personal Jurisdiction
 
 39
 Appellants argued before the district court that the relevant contacts for personal jurisdiction under the FSIA must be within California, the forum state. The district court rejected this contention, relying on Texas Trading. In Texas Trading, the Second Circuit held that, where service is made under FSIA section 1608, "the relevant area in delineating contacts is the entire United States, not merely [the forum state]." 647 F.2d at 314. We agree with Judge Schwarzer's analysis of this issue, which appears at 628 F.Supp. 599 at 605-08, and adopt it as expressing the view of this court. The record shows that the Dominican Republic has sufficient contacts in the United States to give the district court personal jurisdiction.
 
 
 40
 The district court also held that, because the Instituto was an agent of the Republic, in personam jurisdiction existed over the Instituto. 628 F.Supp. at 608. Appellants assert, however, that because the Instituto is an autonomous juridical entity, the Republic cannot be held liable for the Instituto's commercial activity. Appellants claim that the record does not show sufficient contacts in the United States to establish personal jurisdiction over the Instituto.
 
 
 41
 This contention was raised in the district court for the first time after the hearing on the motion to set aside the default judgment. The district court denied leave to file a supplemental memorandum on the ground that the issue of separate juridical entity is a question of substantive law, not subject matter jurisdiction. Appellants argue that the issue of juridical separateness goes to subject matter jurisdiction and thus may be raised at any time. This argument is inconsistent with settled legal principles.
 
 
 42
 In First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 620, 103 S.Ct. 2591, 2596, 77 L.Ed.2d 46 (1983), the Supreme Court held that the question of identity for purposes of attribution of liability among instrumentalities of a foreign state is a matter of substantive law. Substantive law is defined as "[t]he basic law of rights and duties ... as opposed to procedural law ( ... law of jurisdiction, etc.)." Black's Law Dictionary 1281 (5th ed. 1979). Because the Republic and the Instituto failed to demonstrate excusable neglect, they were precluded from relying on the existence of a possible meritorious defense of separate juridical entity as a basis for setting aside the default judgment.
 
 
 43
 The judgment is AFFIRMED.
 
 
 
 *
 Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Rule 60(b) provides in pertinent part that:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) ... excusable neglect; ... (4) the judgment is void; .... The motion shall be made within a reasonable time, and for reasons, (1), (2), and (3) not more than one year after the judgment, ... was entered....