51 F.3d 281
 1995 Copr.L.Dec. P 27,402
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NINTENDO OF AMERICA, INC., Plaintiff-Appellee,
v.
NTDEC, Nintendo Electronic Co., Jimmy Yao, Wang Wen-Fu, Wang
Su-Tang, Chen Mei-Lin and Mega Soft Inc.,
Defendants-Appellants.
 No. 93-16858.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 15, 1995.*
Decided March 28, 1995.
 
 Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Defendants appeal from the entry and amount of a default judgment in favor of plaintiff in this action for copyright and trademark infringement in violation of 17 U.S.C. Sec. 501 and 15 U.S.C. Sec. 1121 and for unfair competition. Plaintiff, a video game manufacturer, alleged that defendants were engaged in a large-scale operation counterfeiting plaintiff's video games. The district court awarded plaintiff $24,059,062 plus attorneys fees of $108,829.00 and costs of $709.80. The court also granted a worldwide permanent injunction to prevent continued violation of plaintiff's intellectual property rights.
 
 
 3
 Defendants challenge, first, the entry of default judgment, alleging defects in plaintiff's service of documents subsequent to the complaint. Next, they challenge the amount of the judgment, claiming that although the district court's calculations purported to base the award on defendants' profits from their illegal activity, in fact the court unrealistically assumed defendants had zero costs of production and distribution. Finally, defendants appeal the district court's denial of their motion to set aside the default judgment. This court has jurisdiction over the timely appeal under 28 U.S.C. Sec. 1291, and we affirm.
 
 BACKGROUND
 
 4
 Plaintiff-appellee, Nintendo of America, Inc. ("Nintendo"), is a wholly owned subsidiary of Nintendo Company, Ltd. of Kyoto, Japan. Nintendo is the owner of Nintendo Company, Ltd.'s copyrights and trademarks in its products in the United States. Defendants-appellants NTDEC and Nintendo Electronic Co. are Taiwanese corporations. Defendant Mega Soft, Inc. is NTDEC's Los Angeles affiliate. Both NTDEC and Mega Soft are owned and/or operated by defendants Jimmy Yao, Wang Wen-Fu, Wang Su-Tang, and Chen Mei-Lin, who are citizens of Taiwan.
 
 
 5
 Defendants made a business of reproducing plaintiff's computer games, repackaging them, and exporting them for sale into the United States and other countries. Investigators for plaintiff, posing as potential wholesale buyers, visited defendants' plant in Taiwan, purchased samples of infringing products, and were given sales brochures with price lists for infringing products.
 
 
 6
 On June 4, 1991, defendants Jimmy Yao and Wang Wen-Fu were arrested in Chicago for violating 18 U.S.C. Sec. 2320 (trafficking in counterfeit goods) on the basis of their importation and sale of counterfeit Nintendo video game cartridges in the United States. The U.S. Attorney dropped the criminal charges in exchange for a guilty plea by Nintendo Electronics Company, Ltd. on the same felony charge.
 
 
 7
 Nintendo brought the current civil action shortly after the arrest in Chicago. Nintendo served Jimmy Yao and Wang Wen-Fu personally with the complaint. Their attorney, Edmund Nomura, acknowledged service on behalf of all the defendants and filed an answer on July 2, 1991. On August 14, 1991, Burton Bentley was substituted as attorney of record for defendants Nintendo Electronics Co., Jimmy Yao, Wang Wen-Fu, and Mega Soft. Nomura continued to represent defendants NTDEC, Chen Mei-Lin, and Wang Su-Tang.
 
 
 8
 Plaintiff Nintendo's attempts to conduct discovery were repeatedly frustrated. Plaintiff succeeded in deposing Wang Wen-Fu, but defendants subsequently ceased to participate in further discovery. Nintendo resorted to motions to compel discovery, which the district court granted. Its orders explicitly threatened the entry of a default judgment for failure to comply.
 
 
 9
 On August 24, 1992, Bentley moved to withdraw as counsel. Included in the motion was a consent, signed by all his clients except Jimmy Yao, to serve them "addressed to Defendants, and each of them c/o Henry Wong." His motion to withdraw was mailed to the defendants in care of Wong. On September 9, Nomura also filed a motion to withdraw as counsel. His declaration shows that he had been unable to communicate with any of the defendants: his clients failed to respond to his repeated letters or provide any instructions. On September 11, the court granted Bentley's motion to withdraw. The order directed that all pleadings be "served on said Defendants, in care of Henry Wong" and listed Wong's address. On October 2, the court granted Nomura's motion to withdraw and ordered that service on Nomura's former clients be made at the following address: NTDEC Electronics Co., Ltd., 6F No. 22, Sec. 2 Keelung Rd., Taipei, Taiwan, R.O.C.[1] The order also instructed each of Nomura's clients to provide the court with a current address and phone number and to inform the court of any changes. No addresses or phone numbers were provided.
 
 
 10
 Before Nomura's withdrawal, on September 15, the court granted plaintiff's August 21 motion for entry of default judgment against NTDEC, Wang Su-Tang, and Chen Mei-Lin for failure to comply with the discovery orders. Plaintiff subsequently moved successfully for entry of default judgment against each of the remaining defendants. The court issued a notice of hearing for proving up damages against the defaulted defendants, scheduled for March 30, 1993. Defendants did not appear at the hearing to rebut testimony presented by plaintiff. On June 7, 1993 the district court entered a default judgment in the amount of $24,059,062, plus fees and costs. The court also granted plaintiff a worldwide permanent injunction against defendants' infringing activities.
 
 
 11
 On June 17, 1993, defendants petitioned the district court to set aside the default judgment. Among other things, defendants alleged that they had been erroneously advised by counsel that a default judgment would be unenforceable against them in Taiwan. The district court denied the motion. Defendants appeal the entry of judgment, the amount of damages, and the district court's refusal to set the judgment aside.
 
 DISCUSSION
 I. ENTRY OF DEFAULT JUDGMENT
 
 12
 Defendants argue that the district court lacked jurisdiction to enter a default judgment against them because technical errors in certain of the papers prepared by plaintiff deprived defendants of formally correct service and thereby deprived the court of in personam jurisdiction over defendants. Whether a default judgment is void for lack of personal jurisdiction is a question of law reviewed de novo. Electrical Specialty Co. v. Road & Ranch Supply, Inc., 967 F.2d 309, 311 (9th Cir.1992).
 
 
 13
 The first alleged defect concerns the omission of the words "Certificate of Service" and a corresponding signature line from several papers that plaintiff filed with the court. We hold that this omission did not deprive defendants of proper service or deprive the court of jurisdiction.
 
 
 14
 The papers in question state that a copy of the foregoing document was mailed on a certain date to the appropriate addresses. Some papers are signed underneath this statement, and some are signed only by the attorney at the end of the document's text. Defendants argue that unsigned statements of mailing, which do not include signature lines, are not certificates of service under Fed.R.Civ.P. 5(d). We hold that the alleged deviations are immaterial. Any defects in the form of the certificates of service accompanying the documents filed with the court were remedied by the undisputed affidavit of legal secretary Barbara S. Stamm, which was filed in connection with Nintendo's opposition to defendants' motion to set aside the default judgments.[2] Ms. Stamm testified that each of plaintiff's several motions for entry of default judgment were served by her on defendants at the addresses set forth in the district court's September 14, 1992 and October 5, 1992 orders authorizing withdrawal of defendants' counsel. Therefore, defendants' Rule 5(d) argument is unavailing.
 
 
 15
 Defendants also contend that service of the notice of hearing on the default judgment, as well as several other papers, was ineffective because plaintiff addressed them to "Henry Wong" rather than to the "defendants, in care of Henry Wong." Wong's affidavit states that he did not forward any of the mailings to defendants; rather, he returned some to the sender and disposed of the rest. Defendants argue that, because the envelopes were not addressed "in care of," Wong had no way of knowing he was supposed to forward the documents to defendants.
 
 
 16
 Defendants' argument is without merit. When confronted with an unfamiliar mailing, a reasonable person would begin to read it and would see defendants' names in the caption. Absent any suggestion that the addressee, Henry Wong, did not open or read his own mail, the omission of the "in care of" instruction could not deprive him of actual notice that the enclosures were intended for defendants. Omission of the "in care of" instruction was harmless. The issue is who, plaintiff or defendants, must bear responsibility for Wong's failure to forward the documents to defendants.
 
 
 17
 Responsibility rests squarely with the defendants. Their own attorney is the source of Wong's address; it was they who designated Wong as the agent to whom their mail should be entrusted. Thereafter, it was defendants' responsibility to advise Wong of his obligations as recipient of their mail. The alleged failures or omissions of Wong in disposing of their mail are no concern of plaintiff or the court.
 
 
 18
 Defendants argue that they were unable to advise Wong of his responsibilities, because there is no evidence that defendants ever received notice of the court's order that defendants' mail should be sent to them in care of Wong. Wong's and NTDEC's addresses were the last known addresses for defendants, given by defense counsel in counsel's motions to withdraw and incorporated into the court's orders permitting withdrawal. Nonetheless, defendants contend that they cannot be charged with knowing that Wong would be receiving their papers, because counsel had been unsuccessful at contacting defendants even before that point. In short, defendants ask the court to relieve them of responsibility for all events occurring after they broke off contact with their attorneys. This court will not do so.
 
 
 19
 Defendants' success at evading the diligent efforts of their own attorneys to communicate with them is additional proof that none of plaintiff's alleged errors in service were of any practical consequence. Nevertheless, defendants make a final allegation of defective service: the certificates of service accompanying plaintiff's documents failed to declare that copies were mailed to the "last known address" of defendants.
 
 
 20
 Defendants do not challenge the fact that the addresses listed were, in fact, the last addresses known to plaintiff. The addresses were those given to the court by defendants' attorneys, and the court had ordered all papers to be served on defendants at those addresses. Plaintiff was entitled to rely on the court's orders. Reference to the "last known address" in the certificates themselves was unnecessary.
 
 
 21
 Defendants were given proper notice of the hearings on the motions for default judgment. Defendants' failure to show up at the hearings to argue on their own behalf cannot be attributed to any fault of plaintiff or the court, and defendants must bear the consequences. The entry of judgment by default was entirely proper.
 
 
 22
 II. COMPUTATION OF THE AMOUNT OF THE JUDGMENT
 
 
 23
 Defendants challenge the amount of plaintiff's award, contending that, as a matter of law, the district court should have taken defendants' costs into account when it determined defendants' profits from their infringing activity. The district court heard evidence presented by plaintiff on defendants' gross sales, but the court did not offset this number by any amount representing defendants' costs of production and distribution.
 
 
 24
 Section 1117 of Title 15, United States Code, authorizes treble damages based on defendants' profits. It allocates the burdens of proof on sales and costs as follows: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. Sec. 1117(a).
 
 
 25
 Defendants argue that adherence to the statutory allocation of the burden is inappropriate when defendants are not present to defend themselves: even without any evidence presented by defendants, they argue that the court could and should assume that defendant had some costs; therefore, award of the full amount of gross sales was improper.
 
 
 26
 Defendants do not explain how the district court could have ascertained how much to deduct, even if it intended to deduct some amount representing defendants' costs of production. In light of defendants' failure to appear, plaintiff was the court's only source of information. If plaintiff chose not to provide information from which the court could infer defendants' costs, the court was not required to order plaintiff to produce additional evidence and argue defendants' case. Section 1117(a) explicitly states that "the plaintiff shall be required to prove defendant's sales only." All offsets are the responsibility of the defendant, who may either prove offsetting amounts or rely solely to the court's discretion.[3] The statute specifically contemplates that if the defendant fails to meet its burden, and if the court does not see fit to modify the award in the interests of justice, no deduction will be made.
 
 
 27
 In support of their argument, defendants point to cases in which the defendants were unable to prove their costs with the requisite specificity, but deductions were nevertheless made in order to avoid windfalls to the plaintiffs. However, the downward modification in these cases rests on the court's discretion to modify its award in the interests of justice.[4]
 
 
 28
 The case at hand, however, is not one in which defendants tried to prove deductions but were unable to do so. Nothing but defendants' own intransigence prevented them from presenting their own cost figures. Absent any evidence of the amount of defendants' costs, the court was not obligated to take costs into account in calculating profits, and this court will not compel the district court to exercise its statutory discretion in defendants' favor.
 
 III. MOTION TO SET ASIDE DEFAULT JUDGMENT
 
 29
 With respect to defendants' motion to set aside a default judgment, this court reviews the district court's factual findings for clear error. If findings are undisputed or are not clearly erroneous, then the lower court's ultimate determination is reviewed for an abuse of discretion. Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir.1987).
 
 
 30
 Although default judgments are generally disfavored, a district court has discretion to deny a motion to set aside a default judgment when the defendant's culpable conduct led to the default. Id. A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer. Id. We find the defendants' conduct similarly culpable in this case: after answering, defendants willfully absented themselves from the proceedings, cut off contact with their attorneys, and evaded actual receipt of all further papers. Defendants' mistaken belief that they could evade payment of the resulting judgment because it would be unenforceable in Taiwan does not spell out any ground for setting aside the default judgment pursuant to Rule 60(b). The district court did not abuse its discretion in refusing to do so.
 
 CONCLUSION
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Nomura confirmed that this was the most current address for all of his clients
 
 
 [2]
 Rule 5(d) requires that certificates of service accompany certain papers filed with the court. The certificates of service are evidence, but only evidence, that proper service was made. See Fed.R.Civ.P. 5(d), Advisory Committee Notes, 1991 amendment (stating that certificates of service are required to be on file because they "may be useful for many purposes, including proof of service if an issue arises concerning the effectiveness of the service"); see also Fed.R.Civ.P. 4(l ) ("Failure to make proof of service does not affect the validity of the service. The court may allow proof of service to be amended."). Rule 4(l ) refers to the manner of service of the complaint. Both Rule 4(l ) and the note on Rule 5(d) reflect the drafters' intent that certificates of service be merely an aid to proof of valid service, and that the validity of service not be dependent on the formal correctness of the certificate filed with the court
 
 
 [3]
 Such discretion is explicitly granted to the court by 15 U.S.C. Sec. 1117(c), which states:
 If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.
 
 
 [4]
 For instance, American Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060 (2d Cir.1990), held that the district court did not abuse its discretion to deduct costs, despite the fact that the defendants had not proved them with certainty, because the best information about those costs was in the hands of the plaintiff, whose sales of inputs to the defendant constituted the largest component of the defendant's costs. Even in that case, however, there was no argument that the district court was required to accept speculative cost deductions; rather, the court's discretion to do so was squarely grounded in the language of Section 1117(c)