ASSOCIATED INTERNATIONAL IN-
SURANCE COMPANY, a Califor-
nia Corporation, Plaintiff,

v.

Wanda Marie CRAWFORD, a/k/a Wanda
Marie Darnell, and Stephanie De La
Rosa, by her parent and next friend,
Selina De La Rosa, Defendants.

CIV. A. No. 96–WM–529.

United States District Court,
D. Colorado.

Sept. 18, 1998.

E. Steven Ezell, Justin R. Melat, Melat, Pressman, Ezell & Higbie, Robert A. Millman, Colorado Springs, CO, for Plaintiff.

Clayton B. Russell, David M. Dodero, Wood, Ris & Hames, P.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

Before me is plaintiff's motion for summary judgment and defendant Wanda Marie Crawford's motion to set aside default. Upon review of the file and consideration of the parties' statements, I conclude that no further oral argument is required, and I make the following findings and conclusions.

1. De La Rosa is a minor represented in this action and the state civil action by her mother,

*Background*

Plaintiff seeks a declaratory judgment to determine its rights and obligations with respect to an insurance policy issued to Crawford. The policy, which was in effect from October 5, 1993, to October 5, 1995, provided commercial general liability coverage for a day care center run by Crawford and her husband. Defendant Stephanie De La Rosa (De La Rosa) has an interest in the policy as a judgment creditor of Crawford.

On October 8, 1993, when De La Rosa was nine months old, she was left in Crawford's care. Sometime that day, Crawford called 911 to request emergency care for De La Rosa, who was not breathing. Attending physicians determined that De La Rosa suffered from "shaken baby syndrome" and reported the suspected child abuse to authorities.

In January 1994, Crawford was arrested on charges of child abuse involving De La Rosa. A week later, the Colorado Department of Social Services suspended Crawford's day care license; in a subsequent administrative proceeding, an administrative law judge found that Crawford had committed child abuse by shaking or striking De La Rosa.

In October 1994, a jury convicted Crawford of child abuse, a Class 3 felony under Colorado law. She received a sentence of eighteen years imprisonment and is currently incarcerated.

De La Rosa [1] filed a civil action in El Paso County District Court against Crawford, seeking damages related to the child abuse incident. In February 1996, a jury determined that Crawford willfully and wantonly caused injury to De La Rosa. The jury awarded exemplary damages in the amount of $500,000 to De La Rosa.

Plaintiff then filed this declaratory action on March 5, 1996, seeking determinations that: (1) Crawford failed timely to notify plaintiff of the incident involving De La Rosa; (2) De La Rosa's injuries were not accidental and thus were not an "occurrence"

Selina De La Rosa.

under the policy; (3) the injuries to De La Rosa were "expected or intended" and thus were excluded from coverage; (4) the criminal verdict against Crawford establishes that Crawford knew injury to De La Rosa would occur; (5) should the policy cover Crawford, coverage is limited under the "Abuse or Molestation Limitation Endorsement" to $50,000; and (6) the injuries were not accidental for purposes of plaintiff's liability to pay medical expenses.

Plaintiff joined De La Rosa as a party who is "adversely and substantially interested" in the declaratory judgment sought (Plaintiff's Complaint, ¶¶ 35 & 36), allegations which were admitted by De La Rosa in her timely answer.

Crawford did not answer, and, pursuant to plaintiff's Combined Request for Clerk Entry of Default and for Entry of Judgment by Default, the Clerk of the Court noted her default on April 26, 1998. The Clerk also erroneously "noted" De La Rosa's default—an act not requested by plaintiff. De La Rosa immediately objected, asking that the court either deny the request for entry of default or that it strike any such default pending De La Rosa's answer.[2] Plaintiff moved to amend the entry of default, and, pursuant to both pleadings, the court by order dated May 2, 1996, amended the Notice of Default to include only defendant Crawford.

On the same day, default judgment was entered against Crawford;[3] the judgment incorporated the specific findings and conclusions contained in plaintiff's motion. Armed with a judgment, which essentially restates its complaint, plaintiff then moved for summary judgment against De La Rosa on August 2, 1996, arguing that De La Rosa stands in Crawford's shoes and, since the default judgment determined Crawford has no claim, that De La Rosa is bound by that determination as law of the case. Crawford subsequently moved to set aside the default judgment on September 11, 1996.

### Issues Presented

1. Should the default judgment against the insured (Crawford) be set aside?

2. If the default judgment is not set aside, is that judgment binding on the judgment creditor (De La Rosa) as "law of the case" even though the judgment creditor is not in default and had no opportunity to present her case?

### Standards of Review

Pursuant to Fed.R.Civ.P. 55(c), I analyze Crawford's motion to set aside the default judgment under Fed.R.Civ.P. 60(b). Its resolution is largely a matter of my discretion. *United States v. Timbers Preserve, Routt County, Colorado*, 999 F.2d 452, 454 (10th Cir.1993).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. I view the record in the light most favorable to the party opposing the motion. *Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.*, 98 F.3d 1241, 1245 (10th Cir.1996). Where, as here, there is no genuine dispute of fact, the issue is purely a matter of law for the court. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Discussion

#### 1. Motion to Set Aside Default

■ The focus of Crawford's argument is that the default was the result of excusable neglect under Rule 60(b)(1), but Crawford's *pro se* status leads me to a liberal and less stringent or restricted reading of her motion. *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996).

De La Rosa. *See Hawkeye–Security Ins. Co. v. Schulte*, 302 F.2d 174 (7th Cir.1962); *Vermont Mut. Ins. Co. v. Everette*, 875 F.Supp. 1181 (E.D.Va.1995).

---

**2.** De La Rosa's objections asserted her standing "to raise objection to the allegations of the Complaint and to the Entry of Default ... even in the absence of Defendant Crawford–Darnell." Objection to Motion for Entry of Default Against Defendant Wanda Crawford–Darnell, p. 2. That position precludes any argument of waiver, estoppel, or ratification of the default judgment by

**3.** The default judgment was entered before this case was transferred to me.

■ Rule 60(b) is an extraordinary procedure. *Atchison, Topeka, and Santa Fe Ry. Co. v. Matchmaker, Inc.,* 107 F.R.D. 63, 65 (D.Colo.1985). Default judgments are not favored, and Rule 60(b) motions should be liberally construed "when substantial justice would thus be served." *Id.* (citation omitted). Nevertheless, the finality of judgments is important, and Rule 60(b) is not a grant of unfettered discretion. Indeed, the Rule should be applied to reach a balance between potentially competing principles of finality and serving the ends of justice. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994).

■ In search of that balance, I first consider whether Crawford's motion was timely filed as required by Rule 60(b). "The motion shall be made within a reasonable time, and for reasons (1) ... not more than one year after the judgment...." What period of time is reasonable should be determined, at least partially, by the circumstances of the case.[4]

Here, plaintiff filed its complaint on March 5, 1996. By letter dated March 7, 1996, plaintiff not only advised Crawford of the filing but also told her of her obligation to respond within twenty days of service. She was then served on March 21, 1996, but she failed to answer. As a consequence, on April 18, plaintiff filed its Request for Entry of Default and Entry of Default Judgment, which was served on Crawford by certified mail. Still Crawford did nothing, and the Clerk of the Court entered notices of default against Crawford on April 26 and May 2. The default judgment was also entered May 2, 1996, and was served on Crawford on May 6. On August 2, 1996, plaintiff moved for summary judgment based on the default judgment. The motion was served on Crawford even though default judgment had been entered against her. Crawford then moved to set aside the default judgment, on September 11, 1996,[5] more than four months after its entry.

■ Crawford's only justifications for this delay of more than 130 days in filing her motion are the same circumstances which she argues excuse her neglect under Rule 60(b)(1), namely that she was incarcerated, *pro se,*[6] and without funds to hire an attorney because her assets are held in trust. Those arguments do not mesh with the prevailing case law.

■ Incarceration, by itself, does not excuse a litigant from responding to a lawsuit. In *Jones v. Phipps,* the Seventh Circuit rejected a claim that incarceration excused a party's failure to participate in litigation:

[A] jailed litigant ought to be treated neither worse, nor better, than any other party when it comes to the conduct of litigation unless some special circumstance of confinement interferes with her ability to manage legal affairs ... or the prisoner's inability to contest entry of a default judgment was clearly beyond her control.... *Thus neither simple incarceration nor lack of legal counsel on the particular matter at issue, by themselves, provide the requisite good cause for defaulting.*

39 F.3d 158, 163 (7th Cir.1994) (citations omitted; emphasis added).

Crawford presents no special circumstances here. She does not claim that she was in solitary confinement or that telephone or other privileges were denied her. Indeed, she apparently was able to communicate with the attorney who represented her in the criminal case to try to get help from De La Rosa with respect to the default.

Crawford's arguments based on her unrepresented status are also unavailing. "It is well-established that failure to seek advice of counsel does not constitute excusable ne-

---

4. A district judge's ruling on whether the motion to set aside was filed within a reasonable time as required by Rule 60(b) may be reviewed only for abuse of discretion. *First RepublicBank Fort Worth v. Norglass, Inc.,* 958 F.2d 117, 119 (5th Cir.1992); *Federal Land Bank v. Cupples Bros.,* 889 F.2d 764, 767 (8th Cir.1989).

5. Crawford signed the motion to set aside on August 14, 1996, but it was not filed until September 11, 1996.

6. The attorney who defended her in the civil action filed by De La Rosa was paid by plaintiff (representing Crawford under a reservation of rights) and thus could not continue that representation in this action.

glect." *Matchmaker*, 107 F.R.D. at 65 (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1446 (10th Cir.1983)). Her motion to set aside, although not a model of legal writing, does demonstrate that she was capable of filing a *pro se* motion for extension of time or other response.[7] In addition, there is at least a question regarding her claim of impecuniousness. Plaintiff points out that her transfer of assets to a trust was voluntary and asserts that she should not be allowed to use the transfer to excuse her default.

■ On the record before me, therefore, I have a party who had repeated notices of impending judgment yet took no action to avoid or cure the situation until well after plaintiff filed a motion for summary judgment based upon that judgment. Crawford's only excuses, by themselves, are not legitimate. Even assuming her failure to timely file a response or request for extension was the result of inadvertence or lack of diligence, these, alone, do not constitute excusable neglect. *See* 12 *Moore's Federal Practice*, 60.41 (3d ed.1997). Accordingly, the motion to set aside the default judgment because of excusable neglect pursuant to Rule 60(b)(1) should be denied.

■ Those same reasons are likewise not sufficient justification for a four month delay in responding, and I conclude Crawford's motion was not filed within a reasonable time as required by Rule 60(b). *White v. American Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir.1990); *Security Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067–68 (10th Cir. 1980) (Rule 60(b)(1) motion not filed within reasonable time where unjustified delay of 115 days in filing motion).

■ In addition, the Tenth Circuit has adopted a three-prong standard that must be met by a movant to obtain relief: (1) the default was not the result of her culpable conduct; (2) she has a meritorious defense; and (3) plaintiff will not be prejudiced by

setting aside the judgment. *Timbers Preserve*, 999 F.2d at 454; *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.), cert. denied, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). *See generally* 12 *Moore's Federal Practice*, 60.22.

Given the circumstances here, Crawford's conduct may be considered culpable under the three-prong *Meadows* test. The Tenth Circuit, citing *Meadows* with approval, concluded that "a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default." *Timbers Preserve*, 999 F.2d at 454. Certainly one may conclude her failure to respond despite several notices was willful. In addition, and as noted, Crawford has presented no legal excuse for her default. Accordingly, she has also failed the first prong of the *Timbers Preserve* preconditions to relief.

Since her default is the result of her own culpable conduct, I need not consider whether the other two prongs, meritorious defense[8] and prejudice, have been met. *Meadows*, 817 F.2d at 521.

Because of her *pro se* status, I have given consideration to whether Crawford is entitled to relief under any other provision of Rule 60(b), even though not argued in her motion to set aside. Under the circumstances of this case, only Rule 60(b)(6) ("any other reason justifying relief") would be a possibility. This "catch-all" provision is normally interpreted as a separate and distinct reason from the balance of the rule. 12 *Moore's Federal Practice*, 60.48. The leading case for such relief is *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 1099 (1949), where the Supreme Court set aside a notice of default in proceedings brought by the government to revoke the defendant's citizenship. *Id.*, 335 U.S. 601, 69 S.Ct. at 390. The Court held because defendant was incarcerated, "weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occu-

---

7. *Cf. Jones*, 39 F.3d at 164 (finding that *pro se* defendant was capable of retaining new counsel and/or filing a request for more time).

8. As discussed under 2. Motion for Summary Judgment, *infra*, the merits of plaintiff's claims

remain at issue. The fact that there may be a meritorious defense, however, was not taken into account in deciding to deny the motion to set aside the default.

pied in efforts to protect himself against the gravest criminal charges," the default was the result of Rule 60(b)(1)'s "excusable neglect" and "other reason[s]" under Rule 60(b)(6). *Id.*

■ The hallmark of *Klapprott* is that defendant was truly a victim of "extraordinary circumstances" not of his own making. In contrast, where a party has a choice but, through inexcusable neglect, does not act, it is not a case of extraordinary circumstances, and relief should not be granted. *Ackermann v. United States,* 340 U.S. 193, 195–97, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Here, Crawford's inaction and lack of responsible action precludes recasting her circumstances as "extraordinary." *See* 12 *Moore's Federal Practice,* 60.48.

I conclude the motion to set aside should be denied.

### 2. *Motion for Summary Judgment*

There exists no genuine issue of material fact. Accordingly, plaintiff's motion for summary judgment may be decided as a matter of law.

Plaintiff argues, exclusively on the basis of the "law of the case" doctrine, that De La

Rosa is bound by unopposed findings and conclusions, crafted solely by plaintiff's attorney,[9] even though De La Rosa is not in default and, as yet, has had no opportunity to contest plaintiff's self-serving findings, conclusions, and interpretations.

In effect, plaintiff asserts the proposition that an interested, indeed a "necessary,"[10] party, who is joined to make the judgment directly applicable to it, is bound by the default judgment even though the party is never given the opportunity to present its case. Whatever conceptual appeal the legal maneuver may have,[11] I decline to rule that the rights of an interested person are determined without an opportunity for hearing.[12] Not surprisingly, and as discussed below, established law does not permit such a facile denial of basic due process.

#### a. *Law of the Case*

■ The major premise of plaintiff's argument is that the "law of the case" doctrine binds De La Rosa to the findings and conclusions in the default judgment against Crawford because De La Rosa stands in Crawford's shoes as a judgment creditor under Colorado law.[13] *General Accident Fire &*

**9.** The default judgment restates plaintiff's motion—almost verbatim—which in turn restates plaintiff's attorney's Affidavit for Entry of Default and for Judgment by Default, again almost word for word. There is no independent verification by the client or any other non-lawyer person. Consequently, judgment was entered solely on the basis of testimony by a person who would otherwise have been precluded from testifying by Rule 3.7 of the Colorado Rules of Professional Conduct. The recognized and accepted practice permits a lawyer to testify to or affirm matters of costs, fees, and service of process, all matters peculiarly within his or her personal knowledge. *See* Rule 3.7(a)(2) and Comment 3. Conversely, the lawyer trying the case should not testify, in person or by affidavit, concerning factual matters at issue, particularly when those facts are transformed into legal conclusions and contract interpretation. For example, the attorney's affidavit declares De La Rosa's injuries "were not accidental or otherwise[,] were not caused by an 'occurrence' under the subject insurance policy and, therefore, plaintiff has no obligation to indemnify...." Affidavit for Entry of Default and for Judgment by Default, ¶ 7(b). The attorney's disallowable testimony thus amounts to impermissible expert testimony on legal matters which are the exclusive province of the court to decide.

*United States v. Messner,* 107 F.3d 1448, 1454 (10th Cir.1997); *Specht v. Jensen,* 853 F.2d 805, 807–10 (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989).

**10.** All persons interested in a declaratory judgment action are deemed necessary parties. *Harris v. Quinones,* 507 F.2d 533, 537 (10th Cir. 1974).

**11.** Indeed, De La Rosa's counsel suggested at the trial preparation conference he might agree De La Rosa is bound if the default judgment is not set aside.

**12.** Plaintiff's argument reminds me of a famous Dickens quote: "If the law supposes that," said Mr. Bumble, "... the law is a ass—a idiot." Dickens, *Oliver Twist.*

**13.** De La Rosa's response analyzes the effect of the default judgment as an issue of collateral estoppel. Collateral estoppel does not apply here, where the default judgment was entered in a proceeding where no final judgment has been entered. *See Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) ("It is clear that res judicata and collateral estoppel

*Life Assurance Corp. v. Mitchell,* 128 Colo. 11, 259 P.2d 862, 866 (1953). Hence, it argues, De La Rosa has no greater rights than Crawford, and the default judgment resolved the sole controversy of coverage against De La Rosa. That premise is flawed.

The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). The doctrine is "an amorphous concept" whose application is a matter of discretion rather than a limit on the court's power. *Id.* Exceptions to the rule allow a court to depart from a prior holding if it is convinced the decision is clearly erroneous and would work a manifest injustice. *Id.,* 460 U.S. 605, 103 S.Ct. at 1391 n. 8.

Consistent with *Arizona v. California,* the Tenth Circuit has held that the law of the case doctrine does not prevent a district court from "re-deciding" an issue unless an appellate court has ruled on the merits of the claim sought to be precluded. *Rishell v. Jane Phillips Episcopal Memorial Medical Center,* 94 F.3d 1407, 1410 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1427, 137 L.Ed.2d 536 (1997); *Mitchell v. Maynard,* 80 F.3d 1433, 1448 (10th Cir. 1996); *Wilmer v. Board of County Comm'rs of Leavenworth County,* 69 F.3d 406, 409 (10th Cir.1995). Since the Tenth Circuit has not ruled here, the law of the case does not preclude De La Rosa from contesting the matters at issue.

Even without this rule, however, it seems apparent that the doctrine should not apply in this case. As the Supreme Court stated in *Arizona v. California,* the "law of the case doctrine was understandably crafted with the course of ordinary litigation in mind. Such litigation proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which after appeal, the binding finality of res judicata and collateral estoppel will attach." 460 U.S. 605, 103 S.Ct. at 1391. That circumstance is in stark contrast to this case where a default judgment, containing only the conclusions sought by plaintiff, exists, without any testing of those conclusions by trial or argument.

The default judgment cannot decide De La Rosa's claims. No preclusive rule, whether it be collateral estoppel, res judicata, or law of the case, is applicable to the issues presented at this stage of this litigation.

### b. Default Not Binding on a Necessary Party Not in Default

Plaintiff's attempt to checkmate De La Rosa by use of the law of the case doctrine or any other similar "standing in shoes" argument must fail because the result would be to deprive De La Rosa of one of her most elementary due process rights: the opportunity to present her case. *See Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

In fact, the Supreme Court long ago recognized that, in a declaratory judgment action such as this, an actual controversy exists between the plaintiff insurer and the injured party even though he or she is not a party to the insurance contract. *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). As an interested party in this controversy, De La Rosa is a necessary party. *Harris v. Quinones,* 507 F.2d at 537.

In this context, the insurer should recognize that "[i]t would be anomalous to hold ... that an actual controversy exists between [an injured party] and [an insurer] and yet deny [the injured party] the right to participate in the controversy." *Hawkeye–Security Ins. Co. v. Schulte,* 302 F.2d at 177. Such a fundamental right cannot be denied to a proper party, not in default, because of the insured's default. *Id.; Federal Kemper Ins. Co. v. Rauscher,* 807 F.2d 345 (3d Cir.1986).

In a case such as this, it is the injured party who will assure that the controversy is fairly heard and determined. Binding the person with a direct interest in coverage to

do not apply if a party moves the rendering court in the same proceeding to correct or modify its

judgment").

the self-interested allegations of the insurer because of the insured's default has "the practical effect of binding the person with the most incentive to litigate to the actions of the party with the least incentive to participate." *State Farm Mut. Automobile Ins. Co. v. Jackson,* 736 F.Supp. 958, 960 (S.D.Ind.1990).

The consequence of the rule advanced by plaintiff may well be that "mischief ... could ·be worked" by the insurer and the insured to prevent the most interested party from pursuing full and fair hearing on his or her claim. *American Motorists Ins. Co. v. North Country Motors, Ltd.,* 57 A.D.2d 158, 393 N.Y.S.2d 799, 801 (1977).

Accordingly, although insurers persist in making this argument (*see Vermont Mutual Ins. Co. v. Everette,* 875 F.Supp. 1181 (E.D.Va.1995)), there is no merit in a legal construct which seeks to bind the most directly interested person while denying him or her basic due process rights. The motion for summary judgment should be denied.

*Conclusion*

For the reasons discussed above, Crawford's motion to set aside the default judgment and plaintiff's motion for summary judgment are denied.