RICHMARK CORPORATION, a California Corporation, Plaintiff–Counter–Claim–Defendant,

v.

TIMBER FALLING CONSULTANTS, INC., an Oregon Corporation, Defendant–Counter–Claim–Third–Party Plaintiff–Appellee,

v.

PEACOCK MANUFACTURING COMPANY, INC., a Texas Corporation, Zhu Yuanchang, Eugene Wang, James Yang, Francis Tong, Third–Party–Defendants,

and

Beijing Ever Bright Industrial Company, a Foreign Corporation, Third–Party–Defendant–Appellant.

Nos. 90–35549, 90–35894, and 91–35280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1991.

Decided July 3, 1991.

John F. Neupert, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for Timber Falling Consultants, Inc., an Oregon corp.

David A. Ranheim, Dorsey & Whitney, Minneapolis, Minn., for Beijing Ever Bright Industrial Co., a foreign corp.

Before PREGERSON, BRUNETTI and NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Third–Party Defendant–Appellant Beijing Ever Bright (BEB), a corporation of the People's Republic of China, appeals the district court's entry of default judgment, denial of BEB's Rule 60(b) motion to set aside the default judgment, and order granting a judgment debtor examination. 747 F.Supp. 1409. We affirm.

## BACKGROUND

BEB, a corporation organized under the laws of the People's Republic of China, is a subsidiary of China Everbright Holdings Co. Ltd., a Hong Kong corporation. In early 1988, BEB entered into a contract with Richmark Corporation (Richmark), a California corporation, to purchase timber. Richmark subcontracted with Timber Falling Consultants, Inc. (Timber Falling), an Oregon corporation, to procure the timber.

Subsequently, Timber Falling failed to deliver the timber. As a result, Richmark defaulted on its contract with BEB. Richmark brought a contract action against Timber Falling for damages.

Timber Falling filed counterclaims against Richmark and BEB (as third-party defendant) for breach of contract, fraud, civil conspiracy, and tortious interference. Timber Falling alleges in its counterclaim: (1) BEB dispatched a ship for the timber without notifying Timber Falling and before Timber Falling's contract required delivery; (2) BEB and Richmark plotted to extract contract concessions from Timber Falling; and (3) Richmark wrongfully repudiated its contract with Timber Falling.

On June 5, 1990, the district court entered a default judgment on the contract, fraud, and civil conspiracy claims against BEB and dismissed the tortious interference claim. The district court found that Timber Falling submitted evidence justifying an award of $2.2 million to compensate for lost profits, pre-judgment interest, and out-of-pocket expenses.

BEB acknowledges that, in the Spring of 1989, it received the third-party complaint via DHL Courier in Beijing and understood the consequences of failing to respond with an answer or other pleading. Yet BEB failed to contact the court or Timber Falling until June 10, 1990—five days after the default judgment was entered. BEB contends that its efforts to respond were hampered by the Chinese government and the chaos caused by the Tiananmen Square Incident.

BEB appealed the judgment and filed a Fed.R.Civ.P. 60(b) motion to set aside the default judgment. On October 15, 1990, the district court denied the Rule 60(b) motion finding that (1) subject matter jurisdiction existed because BEB is an agency or instrumentality of the PRC as defined by the Foreign Sovereign Immunities Act (FSIA);[1] (2) BEB had sufficient contacts with the United States to establish personal jurisdiction; and (3) BEB's failure to appear was the result of culpable conduct. BEB appeals the denial of its Rule 60(b) motion.

On January 11, 1991, the district court granted Timber Falling's motion for a judgment debtor examination. BEB timely appeals this order.

## DISCUSSION

On appeal, BEB contends the district court erred because (1) it lacked personal jurisdiction under the FSIA, (2) service of process under the FSIA was improper, (3) BEB's failure to respond to Third–Party Plaintiff–Appellee Timber Falling's counterclaim did not constitute culpable conduct, and (4) the order granting a judgment debtor examination is overbroad. Finally, Timber Falling moved this court to dismiss BEB's judgment debtor examination appeal for lack of ripeness.

### I. Personal Jurisdiction

Whether personal jurisdiction exists is reviewed de novo where the underlying facts are undisputed. *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1258 (9th Cir.1989). Personal jurisdiction under the FSIA is determined by resorting to the traditional minimum contacts tests. *Gregorian v. Izvestia,* 871 F.2d 1515, 1529 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989). A court may assert general personal jurisdiction if a non-resident defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 & 414 n. 9, 104 S.Ct. 1868, 1872–73 & 1872 n. 9

1. "The FSIA creates subject matter jurisdiction in certain instances over claims brought against foreign sovereigns by creating statutory exceptions to sovereign immunity." *Gregorian v. Izvestia,* 871 F.2d 1515, 1520 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989). As an "agency or instrumentality" of the People's Republic of China, BEB is treated as a foreign state under the FSIA. *See* 28 U.S.C. § 1603(a). At oral argument, BEB confirmed that it does not contest the district court's finding that it is an agency or instrumentality of the People's Republic of China. In this case, subject matter jurisdiction exists under the "commercial activity" exception to foreign sovereign immunity. *See* 28 U.S.C. § 1605(a)(2).

(1984).[2] "[W]here service is made under FSIA section 1608, 'the relevant area in delineating contacts is the entire United States, not merely [the forum state].'" *Meadows v. Dominican Republic,* 817 F.2d 517, 523 (9th Cir.) (quoting *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982)), *cert. denied,* 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987).

■ Here, BEB entered into a contract with Richmark, a California corporation for twelve shiploads of timber valued at $24,-300,000. The contract terms called for BEB to pick up each load of timber at a U.S. port. Payments were to be made in U.S. currency. BEB sent a ship to Oregon to pick up those logs. Finally, BEB sent a representative to Los Angeles to meet with Richmark and Timber Falling about the undelivered timber.

Moreover, BEB does not dispute the following factual allegations: BEB dispatched a ship to California and Oregon to obtain substitute logs after Timber Falling failed to deliver; BEB's representative inspected and took title to the logs in Oregon; BEB negotiated other export transactions with a California export company; BEB transferred millions of dollars to a New York corporation during 1988–89; and BEB funded the purchase of a controlling interest in Mesta Engineering, a Pennsylvania corporation. These contacts establish a consistent pattern of conducting and soliciting business in the United States that certainly may be characterized as substantial. Therefore, we affirm the district court's finding of personal jurisdiction.

## II. Service of Process

BEB contends that Timber Falling failed to properly effect service of process pursuant to 28 U.S.C. § 1608(b). Section 1608(b) provides:

Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint ... in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b).

■ Timber Falling contends that it satisfied the requirements of § 1608(b)(3)(B) by serving BEB via DHL Worldwide Express courier, which provided a return receipt. BEB acknowledges receipt of the summons and counterclaim in Beijing, but argues that service of process on Chinese entities should be made pursuant to § 1608(b)(3)(A), which requires a letter rogatory. This contention is not convincing for two reasons. First, it is based on information outside the record allegedly obtained from the United States State Department. Second, the express language of § 1608(b)(3) provides that Timber Falling

---

**2.** Because we find that BEB had sufficient contacts with the United States to support the exercise of "general" jurisdiction, there is no need to address Timber Falling's argument that the exercise of "specific" jurisdiction is also proper.

may effect service under subsections (A) *or* (B) *or* (C).

Finding that Timber Falling satisfied § 1608(b)(3)(B), however, does not end the analysis. Section 1608(b)(3) applies only "[i]f service cannot be made under paragraphs [1608(b)](1) or (2)." Section 1608(b)(2) allows service "in accordance with an applicable international convention *on service of judicial documents.*" BEB asserts that the Consular Convention Between the United States and the People's Republic of China (Consular Convention) is "an applicable international convention on service of judicial documents," and thus that service could have been made under paragraph (2).

Article 29 of the Consular Convention, the only article out of forty-two articles in the convention to address service of process, provides:

> A consular officer shall be entitled to serve judicial and other legal documents in accordance with international agreements in force between the sending and receiving States or, in absence of such agreements, to the extent permitted by the law of the receiving State.[3]

The Consular Convention between the United States and the People's Republic of China, Feb. 19, 1982, art. 29, 33 U.S.T. 2973, 2998, T.I.A.S. No. 10209.

BEB's contention is incorrect. The Consular Convention is not an "applicable international convention *on service of judicial documents*" under § 1608(b)(2). Rather, the convention governs the privileges, activities, and immunities of consulates and their officers. The fact that one of forty-two articles (Article 29) in the convention allows consular officials to serve legal documents does not convert the focus of the convention to service of judicial documents.

This conclusion is supported by the legislative history of the FSIA. The House Report to the FSIA notes that "[t]he *only such convention* [on service of judicial documents] to which the United States is at present a party is the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, 20 UST 361, TIAS 6638 (1969)." H.R.Rep. No. 1487, 94th Cong. 2nd Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6623 (emphasis added). When the House Report was prepared, at least one other consular convention allowing service of process by consular officials—the Vienna Convention on Consular Relations, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261 (effective in the United States in 1969)—was in effect. *See* 1 Restatement (Third) of the Foreign Relations Law of the United States § 471 n. 2 (1987) ("[a]rticle 5(j) of the [Vienna Convention] lists transmission of [legal] documents as a permissible consular function"). Nonetheless, the House Report did not consider the Vienna Convention to be an "applicable international convention on service of judicial documents" under § 1608. Thus, although the Consular Convention between the United States and the PRC was not in effect when the House Report was prepared, it likewise should not be construed as a "convention on service of judicial documents" under § 1608(b)(2). *See* Dellapenna, *Suing Foreign Governments and Their Corporations*, § 4.3, at 114 (1988) ("[a]t present the United States has ratified only one convention relating to service of process abroad—the Hague Convention"). Service of process therefore was proper under § 1608(b)(3)(B).

### III. Culpable Conduct

BEB contends that the district court erred by not granting BEB's motion to set aside default judgment under Fed.R. Civ.P. 60(b). A district court's decision on a Rule 60(b) motion is reviewed for abuse of discretion. *Thompson v. Housing Auth. of Los Angeles*, 782 F.2d 829, 832

---

**3.** According to BEB, Chinese law would have required the United States embassy to bring the summons and complaint to Ministry of Foreign Affair's consular department, which would then relay the documents to a people's court to serve on BEB. *Notice Issued by the Supreme People's Court, Ministry of Foreign Affairs and Ministry of Justice Concerning Some Questions Pertaining to Mutual Trust for Delivery of Legal Documents Between China and foreign Countries Through Diplomatic Channels,* Waifa No. 47 (1986).

(9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). This court has set forth three factors to consider in Rule 60(b) motions: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984). BEB contests the district court's application of the culpable conduct factor.

The district court relied on *Meadows v. Dominican Republic,* 817 F.2d 517 (9th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 486, 487, 98 L.Ed.2d 485 (1987), to conclude that BEB's conduct was not the result of excusable neglect. In *Meadows,* this court held that because the Dominican Republic knew the legal consequences, its failure to respond to a complaint constituted culpable conduct. *Id.* at 521–22.

BEB cites *Gregorian v. Izvestia,* 871 F.2d 1515 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989), in support of its argument that its conduct was not culpable. In *Gregorian,* the Soviet government, acting on the belief that neither international nor U.S. law provided jurisdiction over the plaintiffs' primary claims, instructed a Soviet trading organization to refuse to enter an appearance. The district court entered a default judgment against the non-appearing defendant and denied defendant's Rule 60(b) motion to set aside the default judgment. We held that the district court abused its discretion in denying defendant's Rule 60(b) motion. We explained that a defendant does not act culpably when it refuses to appear on instructions from its government where the instructions are based on the reasonable belief that the government and its entities are immune from suit. *Id.* at 1525.

■ BEB contends that it failed to respond because of the Chinese government's refusal to grant its initial application for an exit visa and because of the disruption of normal business activities caused by the Tiananmen Square Incident. This case is distinguishable from *Gregorian* in that BEB does not allege that the PRC instructed it to refrain from entering an appear-ance. Rather, BEB simply alleges that the PRC refused to issue it an exit visa. BEB presented no evidence to explain why it could not have communicated with the court through other channels. Moreover, Timber Falling presented evidence that during the same period BEB was able to secure local counsel in the United States to address other matters. In light of this evidence, we cannot say that the district court abused its discretion.

## IV. Reviewability of the District Court's Order for a Judgment Debtor Examination

BEB also appeals the district court's January 11, 1991 order granting Timber Falling's motion for a judgment debtor examination. Timber Falling moves to dismiss this appeal.

■ This court has not addressed the question whether orders granting *post-judgment* discovery are appealable. It is established that *pre-judgment* orders compelling discovery are not considered final judgments and may be appealed only after the issuance of a contempt order for failure to comply. *In re National Mortgage Equity Corp. Mortgage Pool Certificates Litig.,* 857 F.2d 1238, 1239 (9th Cir.1988). We agree with the Eleventh Circuit that this same rule should apply to post-judgment orders granting discovery, such as judgment debtor examinations. *See Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.,* 680 F.2d 743, 746 (11th Cir.1982); *see also Wilkinson v. F.B.I,* 922 F.2d 555, 558 (9th Cir.1991) (citing with approval *Rouse Construction's* holding that post-judgment orders granting discovery are not appealable).

Because the district court has not found BEB in contempt of the order granting a judgment debtor examination, under the rationale of *In re National Mortgage,* we lack jurisdiction to review this appeal.

## CONCLUSION

In short, personal jurisdiction existed and service of process was adequate. The district court did not abuse its discretion in

finding culpable conduct. For these reasons, we affirm the judgment of the district court and the court's denial of BEB's Rule 60(b) motion.

Moreover, we dismiss the judgment debtor examination appeal as premature because the district court has not yet issued a contempt citation.

The decisions of the district court in case Nos. 90–35549 and 90–35894 are AFFIRMED.

The appeal in case No. 91–35280 is DISMISSED.