174 F.3d 969
 99 Cal. Daily Op. Serv. 2941
 THEO. H. DAVIES & CO., LTD., dba Pacific Machinery,
Plaintiff-Appellant,
v.
REPUBLIC OF THE MARSHALL ISLANDS; Kwajalein Atoll
Development Authority; Kwajalein Atoll Joint
Utilities Resources, Defendants-Appellees,
and
International Bridge Construction, Inc., Defendant.
 No. 96-16876.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 16, 1998.
Decided Nov. 17, 1998.
Amended April 23, 1999.
 
 Wesley H. Sakai, Jr., Bendet, Fidell, Sakai & Lee, Honolulu, Hawaii, for the plaintiff-appellant.
 James McCaffrey, San Ysidro, California, and John T. Hoshibata, Crabtree & Hoshibata, Honolulu, Hawaii, for the defendants-appellees.
 Thomas C. Sterling, Klemm, Blair, Sterling & Johnson, Agana, Guam, for the defendant.
 Appeal from the United States District Court for the District of Hawaii Alan C. Kay, District Judge, Presiding. D.C. No. CV-95-01014-ACK/BMK.
 Before: REINHARDT, NOONAN and THOMPSON, Circuit Judges.
 
 ORDER
 
 1
 The opinion filed November 17, 1998 and published at 161 F.3d 550 (9th Cir.1998) is amended as follows:
 
 
 2
 1. At page 553, right-hand column, just after the cite to 28 U.S.C. 1603(d), the paragraph which begins with the language "PacMac's claim in this case" is amended to read:
 
 
 3
 PacMac's claim in this case is based on the commercial conduct of KADA and KAJUR in the United States. In response to the improper functioning of the generator purchased in 1990, PacMac and representatives of KADA, KAJUR and IBC met in Guam and Hawaii, and entered an agreement that required PacMac to overhaul the generator and guarantee its proper functioning. This commercial transaction, even though a single transaction, is sufficient to constitute a commercial activity within the meaning of 28 U.S.C. § 1603(d). See Adler v. Federal Republic of Nigeria, 107 F.3d 720, 724-725 (9th Cir.1997) (holding that Nigeria engaged in commercial activity within meaning of section 1603(d) by entering into a single agreement).
 
 
 4
 2. At page 553, right-hand column, the paragraph which immediately follows the above paragraph and begins with the language "Because KADA and KAJUR carried on" is amended to read:
 
 
 5
 Because KADA and KAJUR carried on a commercial activity in the United States within the meaning of section 1603(d) and the first clause of section 1605(a)(2), they are not entitled to sovereign immunity. The district court, therefore, had subject matter jurisdiction under 28 U.S.C. § 1330(a). We next consider the question of personal jurisdiction.
 
 
 6
 3. At page 554, right-hand column, in the first full paragraph which begins with the language "For many years, KADA and KAJUR", the third sentence beginning with the words "In that year, IBC bought" is amended to read:
 
 
 7
 "In that year, IBC bought a generator from PacMac in Hawaii for eventual use by KADA and KAJUR at the Ebeye Power Plant."
 
 
 8
 With the foregoing amendments, the panel has voted unanimously to deny the petition for rehearing. Judge Reinhardt voted to deny the petition for rehearing en banc, and Judges Noonan and Thompson recommended denial of the petition for rehearing en banc.
 
 
 9
 The petition for en banc rehearing has been circulated to the full court, and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R.App. P. 35(b).
 
 
 10
 The petition for rehearing and the petition for rehearing en banc are denied.
 
 OPINION
 DAVID R. THOMPSON, Circuit Judge:
 
 11
 This case presents the question whether instrumentalities of a foreign state conducted commercial activity within the United States which deprived them of immunity from suit under the Foreign Sovereign Immunities Act ("FSIA").
 
 
 12
 Theo. H. Davies & Co., Ltd., doing business as Pacific Machinery ("PacMac"), filed suit in Hawaii state court against the Republic of the Marshall Islands ("RMI"), Kwajalein Atoll Development Authority ("KADA"), Kwajalein Atoll Joint Utilities Resources ("KAJUR") and International Bridge & Construction, Inc. ("IBC") seeking damages for breach of an agreement relating to the overhaul of a Caterpillar generator. After removal to the United States District Court for the District of Hawaii, the district court granted the motion of defendants KADA and KAJUR to dismiss the action as to them for lack of personal jurisdiction, and denied PacMac's subsequent motion for reconsideration. PacMac appeals.
 
 
 13
 We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse. We conclude that because KADA and KAJUR carried on commercial activity in the United States pertaining to PacMac's breach of contract claim, they are denied sovereign immunity by 28 U.S.C. § 1605(a)(2), that subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1330(a), personal jurisdiction is proper under 28 U.S.C. § 1330(b), and the exercise of personal jurisdiction complies with the due process clause of the Constitution.
 
 
 14
 * FACTS
 
 
 15
 PacMac is a Hawaii corporation which does business in Honolulu, Hawaii and throughout the Pacific. The Republic of the Marshall Islands ("RMI") is a sovereign nation, KADA is an RMI statutory corporation and KAJUR is an ordinary for-profit corporation. KAJUR is 100% owned by KADA, and was formed by KADA to be the owner and operator of the Ebeye Island, Kwajalein Atoll, electrical generation and water desalinization plant. KADA and KAJUR do not contest being characterized as agencies, instrumentalities, and/or political subdivisions of RMI. IBC is an Ohio corporation based in Guam; it operated the Ebeye plant under contract with KADA.
 
 
 16
 In 1990, KADA, through its agent IBC, bought a Caterpillar 3612 diesel-powered electric generator from PacMac for use in the power plant and desalinization facility in Ebeye, RMI. After the generator was installed, a dispute arose. KADA claimed the generator was defective; it did not function properly from the outset, constantly broke down, and required extensive repairs. PacMac countered that the problems were a result of faulty installation, operation and maintenance by IBC. On May 22, 1993, representatives of KADA, KAJUR, IBC and PacMac met in Guam to discuss the problems with the generator. Technical experts from IBC and PacMac disagreed about the cause of the problems but agreed that an overhaul was necessary.
 
 
 17
 At the Guam meeting, it was agreed that PacMac would be paid to overhaul the generator, and in return, PacMac would ensure that the generator would function properly. KADA then paid an initial 25% down payment toward the cost of the overhaul. On October 13, 1993 and April 19, 1994, further meetings with respect to the overhaul were held in Honolulu, Hawaii between representatives of PacMac, KADA and KAJUR.
 
 
 18
 PacMac overhauled the generator. KADA paid two installment payments for the overhaul work, but then refused to pay the balance of $149,680.43. KADA, KAJUR and IBC contended PacMac hadn't fixed the generator so that it would run to its full capacity and work properly with the desalinization unit.
 
 
 19
 When PacMac didn't get paid the balance it claimed was due, it sued the defendants in Hawaii state court. RMI removed the action to the United States District Court for the District of Hawaii, and KADA and KAJUR then moved to dismiss the complaint on the grounds of lack of personal jurisdiction, forum non conveniens, insufficiency of service of process, and failure to join an indispensable party under Federal Rule of Civil Procedure 19. RMI did not join in the motion but filed a statement of non-opposition. The district court granted the motion to dismiss. It determined it lacked personal jurisdiction over KADA and KAJUR, and did not reach the other grounds of the motion.
 
 
 20
 IBC was dismissed from the suit in the state court proceeding. With the district court's dismissal of the action as to KADA and KAJUR, the sole remaining defendant in the district court action was RMI. The district court entered a final judgment as to KADA and KAJUR pursuant to Federal Rule of Civil Procedure 54(b), and this appeal followed.
 
 II
 DISCUSSION
 
 21
 KADA and KAJUR contend that, under the FSIA, they are entitled to immunity. If they are, the district court lacked jurisdiction, and it correctly dismissed the action as to them. The fundamental issue, therefore, might simply be stated: Did the district court have jurisdiction over KADA and KAJUR?
 
 
 22
 To state the jurisdiction issue this simply, however, fails to provide sufficient focus for the analysis. "Jurisdiction" consists of subject-matter jurisdiction and personal jurisdiction. Moreover, even if the district court had jurisdiction, its exercise of that jurisdiction must comport with the requirements of the Constitution.
 
 
 23
 Consistent with these particularized considerations, the Second Circuit provided a framework for addressing the jurisdictional inquiry in Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300 (2d Cir.1981). There, Judge Kaufman, writing for the majority, stated that in a commercial case involving a claim of foreign sovereign immunity, the court should consider five questions:
 
 
 24
 1. Does the conduct the action is based upon or related to qualify as a "commercial activity"?
 
 
 25
 2. Does that commercial activity bear the relation to the cause of action and to the United States described by one of the three phrases of [28 U.S.C.] § 1605(a)(2), warranting the Court's exercise of subject matter jurisdiction under § 1330(a)?
 
 
 26
 3. Does the exercise of this congressional subject matter jurisdiction lie within the permissible limits of the "judicial power" set forth in Article III?
 
 
 27
 4. Do subject matter jurisdiction under § 1330(a) and service under § 1608 exist, thereby making personal jurisdiction proper under § 1330(b)?
 
 
 28
 5. Does the exercise of personal jurisdiction under § 1330(b) comply with the due process clause, thus making personal jurisdiction proper?
 
 
 29
 Id. at 308.
 
 
 30
 We are persuaded that the Second Circuit's analytic framework is the appropriate framework within which to consider the jurisdictional issues in this case. The first step is to recognize that jurisdiction has two separate parts: subject-matter jurisdiction and personal jurisdiction. Subject-matter jurisdiction over a foreign state, its agency or instrumentality is conferred by 28 U.S.C. § 1330(a), provided the foreign state, its agency or instrumentality is not entitled to immunity.[1] The "most frequently relevant" exception to the grant of sovereign immunity is that set forth in 28 U.S.C. § 1605(a)(2). Texas Trading, 647 F.2d at 307. This is the relevant exception in the present case. It provides that immunity for a foreign state shall not exist when:
 
 
 31
 [An] action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
 
 
 32
 28 U.S.C. § 1605(a)(2).
 
 
 33
 Because neither KADA nor KAJUR contests being characterized as an agency or instrumentality of RMI, subject-matter jurisdiction exists over them under section 1330(a), provided they are not entitled to sovereign immunity. Under the first clause of section 1605(a)(2), they are not entitled to sovereign immunity if PacMac's claim "is based upon a commercial activity carried on [by them] in the United States." 28 U.S.C. § 1605(a)(2).
 
 
 34
 A "commercial activity" is defined by the FSIA in subsection 1603(d), which provides:
 
 
 35
 (d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
 
 
 36
 28 U.S.C. § 1603(d).
 
 
 37
 PacMac's claim in this case is based on the commercial conduct of KADA and KAJUR in the United States. In response to the improper functioning of the generator purchased in 1990, PacMac and representatives of KADA, KAJUR and IBC met in Guam and Hawaii, and entered an agreement that required PacMac to overhaul the generator and guarantee its proper functioning. This commercial transaction, even though a single transaction, is sufficient to constitute a commercial activity within the meaning of 28 U.S.C. § 1603(d). See Adler v. Federal Republic of Nigeria, 107 F.3d 720, 724-725 (9th Cir.1997) (holding that Nigeria engaged in commercial activity within meaning of section 1603(d) by entering into a single agreement).
 
 
 38
 Because KADA and KAJUR carried on a commercial activity in the United States within the meaning of section 1603(d) and the first clause of section 1605(a)(2), they are not entitled to sovereign immunity. The district court, therefore, had subject matter jurisdiction under 28 U.S.C. § 1330(a). We next consider the question of personal jurisdiction.
 
 
 39
 Personal jurisdiction exists under 28 U.S.C. § 1330(b) so long as the court has subject-matter jurisdiction under section 1330(a) and service has been effected under 28 U.S.C. § 1608. Here, as we have said, there is subject-matter jurisdiction under section 1330(a). The record also reflects proper service of process under section 1608. Therefore, the statutory requirements for personal jurisdiction are met. This brings us to the question whether the exercise of personal jurisdiction in this case complies with the due process clause of the Constitution.[2]
 
 
 40
 In Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247 (9th Cir.1980), we quoted the House Report: "Section 1330(b) provides, in effect, a Federal long-arm statute over foreign states (including political subdivisions, agencies, and instrumentalities of foreign states)." Id. at 1255 n. 5 (quoting H.R.Rep. No. 94-1487 at 13-14 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6612). This long-arm statute, however, is constrained by the minimum contacts required by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. Thos. P. Gonzalez, 614 F.2d at 1255. Indeed, the legislative history confirms that "[t]he requirements of minimum jurisdictional contacts and adequate notice are embodied in [section 1330(b) ]." Id. n. 5 (quoting H.R.Rep. No. 94-1487 at 13-14 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6612).
 
 
 41
 We must consider, therefore, the extent of the contacts of KADA and KAJUR with the United States. See Straub v. Green, 38 F.3d 448, 452 (9th Cir.1994); Meadows v. Dominican Republic, 817 F.2d 517, 523 (9th Cir.1987) (relevant geographical area for evaluating minimum contacts under the FSIA is the entire United States).
 
 
 42
 In determining the sufficiency of a defendant's contacts, "it is not only defendant's activities in the forum, but also actions relevant to the transaction by an agent on defendant's behalf, which support personal jurisdiction." Texas Trading, 647 F.2d at 314 (citing Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 120-121 (2d Cir.1967) holding that if an agent of a company were not performing the duties in question, the parent company "would undertake [themselves] to perform substantially similar services").
 
 
 43
 For many years, KADA and KAJUR have bought both goods and services from providers doing business or located in the United States. Purchases from PacMac in Hawaii alone date back to 1983. In that year, IBC bought a generator from PacMac in Hawaii for eventual use by KADA and KAJUR at the Ebeye Power Plant. That generator cost $206,887.00. In 1989, IBC bought another generator from PacMac in Hawaii for the Ebeye power plant. That generator cost $265,800.00. The generator at issue in this case was purchased from PacMac in Hawaii in 1990 for $1,187,612.00. KADA solicited bids for the generator in Hawaii. The overhaul agreement, which is the subject of this litigation, was negotiated in Guam with meetings also held in Hawaii between representatives of KADA, KAJUR and PacMac.
 
 
 44
 We conclude that KADA's and KAJUR's contacts in the United States constitute a consistent and substantial pattern of business relations which warrant the exercise of general personal jurisdiction over them.[3] KADA and KAJUR have "so thoroughly 'invok[ed] the benefits and protections of [the United States] laws,' ... [that they] would have every 'reason to expect to be haled before a ... court' here." Texas Trading, 647 F.2d at 315 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and Shaffer v. Heitner, 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).
 
 
 45
 Having determined that the contacts of KADA and KAJUR with the United States are sufficient to invoke general personal jurisdiction, we conclude it is unnecessary to consider the seven-factor test for specific personal jurisdiction.[4] This is consistent with our holding in Richmark Corp. v. Timber Falling Consultants, Inc., 937 F.2d 1444 (9th Cir.1991). In Richmark, we held that "substantial" contacts were a valid measure of whether "a court may assert general personal jurisdiction." Id. at 1446 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 & 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). We also declined to examine specific jurisdiction when general jurisdiction was available under the FSIA. Id. at 1447.
 
 
 46
 The district court did not follow Richmark. Instead, it relied on a footnote in Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, 1411 n. 3 (9th Cir.1989) to support its conclusion that general jurisdiction is unavailable under 28 U.S.C. § 1605(a)(2).[5] The Teledyne footnote, however, was not necessary for the court's decision, and appears only to provide some guidance as to how a court may interpret the "based upon" language contained in section 1605(a)(2). Accordingly, the Teledyne footnote does not preclude our holding.
 
 
 47
 Our view of the jurisdictional reach of section 1605(a)(2) is shared by Justice Stevens. In his dissenting opinion in Saudi Arabia v. Nelson, 507 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993), Justice Stevens acknowledged that the issue "whether the first clause of § 1605(a)(2) broadly authorizes 'general' jurisdiction over foreign entities that engage in substantial commercial activity in this country, or more narrowly, authorizes only 'specific' jurisdiction over particular commercial claims" has not been resolved. Id. at 379, 113 S.Ct. 1471. Nevertheless, he wrote:
 
 
 48
 I am inclined to agree with the view expressed by Judge Higginbotham in his separate opinion in Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne De Navigation, 730 F.2d 195, 204-205 (5th Cir.1984) (concurring in part and dissenting in part), that the first clause of § 1605(a)(2), interpreted in light of the relevant legislative history and the second and third clauses of the provision, does authorize "general" jurisdiction over foreign entities that engage in substantial commercial activities in the United States.
 
 
 49
 Id.
 
 
 50
 In Vencedora, Judge Higginbotham painstakingly set out an argument supporting the idea that "doing business" (analogized by Justice Stevens to "general" jurisdiction) can properly be used as a jurisdictional ground. Vencedora, 730 F.2d at 206. Judge Higginbotham stated: "The FSIA's 'substantial contact' language ... does not signal a congressional intent to enact more stringent a test than the 'minimum contacts' necessary for 'doing business' jurisdiction." Id.
 
 
 51
 We agree with these views. General personal jurisdiction over a foreign entity that engages in substantial commercial activity in the United States is authorized by the first clause of 28 U.S.C. § 1605(a)(2).
 
 III
 CONCLUSION
 
 52
 Subject-matter jurisdiction exists over KADA and KAJUR under 28 U.S.C. § 1330(a). The exercise of personal jurisdiction is statutorily authorized by 28 U.S.C. § 1330(b). The statutory requirements have been met. The exercise of personal jurisdiction is constitutionally permissible because KADA and KAJUR have had sufficient minimum contacts with the United States to establish general personal jurisdiction over them. The exercise of this jurisdiction is appropriate under the first clause of 28 U.S.C. § 1605(a)(2) without an inquiry into the seven-factor test for specific personal jurisdiction.
 
 
 53
 The district court's dismissal of KADA and KAJUR for lack of personal jurisdiction is reversed. This case is remanded to the district court for further proceedings.
 
 
 54
 With regard to those proceedings, the district court denied PacMac's motion to stay a parallel action brought by KADA and KAJUR against PacMac and others in the Marshall Islands entitled Kwajalein Atoll Development Authority, et al., v. Theo. H. Davies & Co., Ltd., et al., No. E-1996-08 (the "RMI Action"). PacMac has moved for a similar stay in this court. We affirm the district court's denial of the motion for a stay of the RMI Action, and decline to issue our own stay. However, in the event PacMac should suffer prejudice in the RMI Action as a result of what it contends to be interference with the RMI judiciary by the legislative and executive branches of the government of the RMI, the district court may reconsider staying the RMI Action. The district court may also reconsider its denial of PacMac's stay motion in light of our reversal of the district court's dismissal of KADA and KAJUR from the present case.
 
 
 55
 REVERSED and REMANDED.
 
 
 
 [1]
 28 U.S.C. § 1330(a) reads:
 The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.
 
 
 [2]
 Only brief mention need be made of the third question in the Texas Trading analytical framework--whether the Constitution permits Congress to confer the applicable subject-matter jurisdiction under "the permissible limits of the 'judicial power' set forth in Article III." The Constitution obviously permits Congress to confer such subject-matter jurisdiction. PacMac's suit is "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. Const., art. III, § 2, cl. 1. In fact, it is to this article and clause that the FSIA's drafters looked in securing a constitutional basis for FSIA suits in general. See House Judiciary Committee, Jurisdiction of United States Courts in Suits Against Foreign States, H.R.Rep. No. 94-1487 (1976), at 12, 33, reprinted in 1976 U.S.C.C.A.N. 6604, 6611, 6632; Texas Trading, 647 F.2d at 313
 
 
 [3]
 We need not decide whether KADA or KAJUR is a "person" for purposes of the Due Process Clause. We simply assume, without deciding, that both are. See Republic of Argentina v. Weltover, 504 U.S. 607, 619, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992)
 
 
 [4]
 The seven factors are:
 (1) the extent of the defendant's purposeful interjection into the forum state ...; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.
 Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487-88 (9th Cir.1993).
 
 
 [5]
 The footnote from Teledyne reads: "One way of expressing the point is that subsection 1605(a)(2) does not recognize general in personam jurisdiction." Teledyne 892 F.2d at 1411-12 n. 3