**NAUMES, INC., an Oregon corporation, Plaintiff,**

**v.**

**ALIMENTOS DEL CARIBE, a Colombian corporation, Defendant.**

**No. CV 98–1025–HU.**

United States District Court, D. Oregon.

May 3, 1999.

Timothy Brophy, Brophy, Mills, Schmor, Gerking & Brophy, LLP, Medford, OR, for plaintiff.

Dean Aldrich, Tarlow, Jordan & Schrader, Portland, OR, for defendant.

**ORDER**

PANNER, District Judge.

Magistrate Judge Dennis J. Hubel filed his Findings and Recommendation on March 19, 1999. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Plaintiff has filed timely objections. I have, therefore, given the file of this case a *de novo* review. I ADOPT Magistrate Judge Hubel's Findings and Recommendations. Defendant's motion to dismiss this

action for lack of personal jurisdiction (# 22) is granted, defendant's motion to strike portions of the Thiessen affidavit (included within defendant's reply brief) is denied, and plaintiff's motion to change venue to Medford (# 26) is denied as moot.

IT IS SO ORDERED.

## FINDINGS & RECOMMENDATION

HUBEL, United States Magistrate Judge.

Plaintiff filed this action against defendant seeking to recover the balance of money owed for a shipment of Bartlett pears plaintiff sold to defendant. Plaintiff is an Oregon corporation which shipped the pears from its facility in Medford, Oregon. Defendant is a Colombian corporation who moves to dismiss this action for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Plaintiff seeks to change the place of trial from Portland to Medford. For the reasons which follow, I recommend that defendant's motion to dismiss be granted and that plaintiff's motion to transfer venue be denied as moot.

### Background

The following facts are undisputed. In September of 1996, plaintiff traveled to Colombia in South America and initiated contact with defendant about the sale of pears. Subsequent negotiations took place between the parties by telephone and facsimile transmissions. Defendant ultimately placed three orders for pears which arrived in two shipments. The first shipment arrived in two separate containers in a substandard condition and had to be sold at a loss; the second shipment arrived shortly thereafter and was accepted. The second shipment is not at issue. Both shipments were FOB Long Beach, California and ultimately destined for Bogota, Columbia.

Plaintiff claims that the pears were in perfect condition when they were packed and shipped in Medford and that any damage must have occurred due to temperature control problems after the shipments arrived in Los Angeles. Defendant claims that the damage occurred prior to the pears' arrival in Los Angeles.

### Discussion

Plaintiff bears the burden of establishing jurisdiction. *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990). Where the court decides the jurisdictional issue based on affidavits and written discovery materials, the plaintiff "is only required to make a prima facie showing of jurisdictional facts in order to defeat a motion to dismiss." *Id.* at 912 (citation omitted).

To establish personal jurisdiction, the plaintiff must show both that the forum state's long-arm statute confers personal jurisdiction over the nonresident defendant and that the exercise of jurisdiction comports with federal due process. *Gray & Co. v. Firstenberg Machinery Co., Inc.,* 913 F.2d 758, 760 (9th Cir.1990). The Oregon long-arm statute confers jurisdiction "to the extent permitted by due process." *Id.* at 760; see O.R.C.P. 4 L. Thus, the "jurisdictional inquiries under state law and federal due process merge into one analysis." *Roth v. Garcia Marquez,* 942 F.2d 617, 620 (9th Cir.1991).

Due process requires that a defendant have a "minimum level of contacts with the forum before personal jurisdiction may be exercised." *Farmers Ins. Ex.,* 907 F.2d at 913, *citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). If a nonresident defendant's activities in the forum state are substantial or continuous and systematic, the court may assert general jurisdiction over a claim, even if the claim is unrelated to the defendant's forum activities. If the defendant's contacts are neither substantial nor continuous and systematic, the court must determine if "specific" or "limited" jurisdiction exists. *Farmers Ins. Ex.,* 907 F.2d at 913.

Plaintiff does not claim that general jurisdiction exists over this defendant. It is undisputed that, other than its receipt of

two shipments of pears from the plaintiff, defendant has never done any business in Oregon, nor does defendant advertise or have any agents in Oregon. None of defendants employees have ever been to Oregon. Thus, the issue presented is limited to a determination of whether plaintiff has established a prima facie case that defendant should be subject to the court's specific jurisdiction.

In order to meet this burden, plaintiff "must demonstrate that defendants had purposeful contacts with [the forum], that the present cause of action arose out of those contacts, and that exercising jurisdiction over defendants would not be unreasonable." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1320 (9th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 446, 142 L.Ed.2d 401 (1998). All three prongs of the minimum contacts test must be satisfied to establish specific personal jurisdiction. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817–18 n. 10 (9th Cir.1988).

### 1. *Purposeful Availment*

The Ninth Circuit has specifically distinguished tort and contract cases when applying the purposeful availment prong of the specific jurisdiction test to a given set of facts. With contract cases, the mere existence of a contract with a resident of the forum state will be insufficient to satisfy the purposeful availment requirement. *Roth*, 942 F.2d at 621. Something more is required and the Supreme Court has indicated that courts should look for "continuing relationships and obligations with citizens of [the forum state]." *Id.*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In *Burger King*, the Court found such a "continuing relationship" where the parties' contract involved a long-term franchise agreement. The Court emphasized the need for a realistic approach in evaluating personal jurisdiction based on a contract, stating that a contract is an intermediate step between prior negotiations and future consequences that are the real object of the transaction. *Id.* at 479, 105 S.Ct. 2174. "It is these

factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." *Id.*

An examination of cases in which personal jurisdiction has arisen in the context of a breach of contract action provides a helpful framework for analysis.

In *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247 (9th Cir.1980), plaintiff was an international grain trader who sold 15 shipments of grain to the defendant, a Costa Rican interest, and who purchased two shipments of grain from the defendant, all over a four year period. Defendant circulated requests for bids in Costa Rica and plaintiff responded through an agent living in Costa Rica. All contracts specified delivery in Costa Rica. None of the shipments were delivered to or originated from California. The court found that plaintiff's California residency, the fact that plaintiff would suffer financial impacts in California and the parties' use of the mails and wire to negotiate were insufficient to establish the purposeful availment prong for California jurisdiction. *Id.* at 1253–1254. In distinguishing prior cases, the court noted that the amount of money involved was a relevant factor the court could consider in assessing the nature and quality of the defendant's contacts. *Id.* at 1253; *Contrast Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1446 (9th Cir.1991) (finding personal jurisdiction over foreign defendant who made single purchase of 12 shiploads of timber worth over $24 million and also inspected and took title in Oregon), *cert. denied*, 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992).

The sale of a single, large piece of used equipment was found to be insufficient to support personal jurisdiction in *Gray & Co. v. Firstenberg*, 913 F.2d 758 (9th Cir. 1990). There, the plaintiff was an Oregon

corporation which solicited the purchase of the equipment from a California broker for delivery in Oregon. The equipment itself was located in Illinois and plaintiff traveled to Illinois to inspect the machine and negotiate the purchase.

In *Roth,* a film maker filed a breach of contract action against a Mexican author and his agent. The court noted that plaintiff had solicited the defendant and had traveled to Mexico, Havana, and Barcelona to meet with the defendant. However, in that instance, the Ninth Circuit held that the future consequences of the contract at issue was the decisive factor since the contract involved the negotiation of movie rights for a film that would be produced wholly in California over an extended period of time. *Roth,* 942 F.2d at 621.

In *Peterson,* the court found personal jurisdiction based primarily upon the location of contract negotiations. The court noted that such negotiations are considered a "classic" example of the type of activities that can give rise to personal jurisdiction. *Peterson,* 140 F.3d at 1320. Courts typically look at such factors as the extensiveness of negotiations, where the negotiations took place and whether the defendant traveled to the forum; no one factor is dispositive. *See Id.*[1]

While all of these Ninth Circuit decisions provide some guidance, none address the precise factual situation presented here relative to the two shipments of pears. Both *Gray* and *Thos. P. Gonzalez,* relied upon by the defendant are distinguishable in one critical respect—the product at issue did not originate from the plaintiff's chosen forum.[2] However, several other circuits have addressed similar issues. In *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920 (8th

Cir.1995), plaintiff was a South Dakota company that manufactured printed folding cartons. Plaintiff solicited the purchase of cartons from the defendant in California and sent a purchase order to the defendant for product FOB California. Defendant canceled the order and plaintiff filed an action for breach of contract. The court found the defendant's contacts insufficient to sustain personal jurisdiction. In so holding, the court focussed upon the fact that the plaintiff solicited defendant's business in defendant's home forum. The court also reiterated that a single contract was insufficient "particularly ... when the nonresident defendant is a buyer rather than a seller." *Id.* at 922.

This notion of the "passive buyer" was later relied upon by the Third Circuit in *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.,* 75 F.3d 147, 151–152 (3rd Cir.1996) as a factor in rejecting personal jurisdiction over a nonresident who was solicited to purchase fiberglass from a Pennsylvania dealer. Plaintiff was a Pennsylvania resident who filed the action in a Federal District Court in Pennsylvania. Although the fiberglass originated in Texas and was shipped directly to defendant in California, the court found plaintiff's solicitation significant. *See also Chung v. NANA Development Corp.,* 783 F.2d 1124, 1127 (4th Cir.) (rejecting personal jurisdiction over defendant who sold frozen reindeer antlers which were damaged during shipment due to improper temperature controls; plaintiff buyer solicited purchase and picked up the goods in the defendant's forum), *cert. denied,* 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986).

---

1. Consent to arbitrate contractual disputes and actually engaging in an arbitration in the forum has also been held to satisfy the purposeful availment requirement. *Fireman's Fund Ins. Co. v. National Bank of Cooperatives,* 103 F.3d 888, 893 (9th Cir.1996).

2. In its reply, defendant also relies upon *EuroAmericana, Inc. v. Catania–Spagna Corp.,*

1996 WL 557751 (N.D.Cal.1996). This case is also distinguishable on grounds that the plaintiff was a broker and the majority of the product in question (olive oil) had no physical connection to the forum. Only when olive oil was in short supply was California olive oil substituted. That was insufficient to support jurisdiction.

The Third Circuit rejected prior contracts between the parties as a relevant factor for specific jurisdiction: *"Burger King's* reference to 'prior negotiation,' 'future consequences,'" "terms of the contract," and course of dealing however, clearly contemplates dealings between the parties in regard to the disputed contract, not dealing unrelated to the cause of action. *Vetrotex,* 75 F.3d at 152 (cites omitted); *see also RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272 (7th Cir.1997) (rejecting prior unrelated contracts as a relevant factor for specific personal jurisdiction); *EuroAmericana,* 1996 WL 557751, *4 (rejecting plaintiff's claim of anticipated an ongoing sales relationship based upon extension of credit as a factor justifying personal jurisdiction).

▮ The preceding analysis gives rise to the following relevant factors that should guide any decision as to whether a defendant involved in a claim for breach of contract for the sale of goods has purposefully availed itself of a forum's laws so as to justify the exercise of specific personal jurisdiction over the defendant:

1. Who initiated the contact?

2. What were the goods' origination and destination?

3. What is the value of the goods involved in the disputed transaction?

4. How many contacts did defendant have with the forum?

5. Where did contract negotiation take place?

6. Are there prior dealings or future consequences anticipated between he parties that relate to the contract in dispute?

▮ There is no dispute that plaintiff initiated contact with defendant and solicited the sale of pears in Colombia. Defendant was a "passive buyer." The goods originated in the forum, but were destined initially for Los Angeles where legal title changed to defendant and were ultimately destined for Colombia. The value of the goods involved in the transaction was relatively minimal—both the disputed shipment and accepted shipment total $43,000 and plaintiff's prayer for relief seeks $20,072.85.[3] From plaintiff's submissions, it appears that defendant's contacts with the forum were limited to a few phone calls and an exchange of less than a dozen facsimile transmissions and/or letters between plaintiff and defendant. Negotiations took place through phone, wire and the mails. Defendant's communications were clearly in response to plaintiff's contacting defendant on plaintiff's visit to Colombia.

The disputed shipment was the first contact between the parties. Plaintiff contends that the parties anticipated future contracts and thus, purposeful availment should be satisfied. In support of this claim, plaintiff notes the second shipment of pears and proffers two letters written by a representative for the defendant indicating a desire to purchase apples and inquiring about the possibility of establishing an exclusive distributorship. What plaintiff fails to acknowledge is that its own representative responded with a letter to the defendant indicating that it did not engage in exclusive distribution agreements and that it had and would continue to ship products to another Colombian distributor. Unlike a franchise agreement or an actual exclusive distribution agreement, the parties' correspondence show at best, that the parties anticipated future single shipment sales of fruit. Such contracts would have been entirely separate and unrelated to the transaction at issue. *Vetrotex,* 75 F.3d at 152; *RAR, Inc.,* 107 F.3d 1272.

Weighing all of the factors, plaintiff has failed to make a prima facie showing that defendant has purposefully availed itself of the privilege of conducting business in Oregon. Defendant's contacts with the forum are too limited and attenuated to sat-

---

**3.** Federal jurisdiction is premised upon federal question jurisdiction, 28 U.S.C. § 1331, since plaintiff includes a claim for relief under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a.

isfy the minimum contacts requirement under the Due Process clause. Because plaintiff fails to demonstrate that defendant purposefully availed itself of the privilege of doing business in Oregon, I need not address whether the claim arose from forum related activities or whether the exercise of jurisdiction would be reasonable. *McGlinchy*, 845 F.2d at 817–18. However, if these additional factors are considered, it becomes even more clear that plaintiff fails to carry its burden.

### 2. *"Arising Out Of" Forum Related Contacts*

There is no dispute that the present controversy arises out of the defendant's forum related contacts.

### 3. *Reasonableness*

 Seven factors must be considered in determining whether the exercise of personal jurisdiction over a non-resident defendant would be otherwise reasonable under the Due Process clause:

"(1) The extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

*Theo. H. Davies & Co., Ltd. v. Republic of Marshall Islands*, 161 F.3d 550, 551 n. 4 (9th Cir.1998). · Plaintiff bears the burden of proving the unavailability or an alternative forum. *FDIC v. British–American Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987).

 As noted in the purposeful availment analysis, the defendant's purposeful interjection into the forum has been minimal. Defendant has proffered an affidavit

from Hernan Marino Ossa, defendant's owner and general manager, who indicates that his company is "not large" and given the "economic crisis currently facing the fruit business in Colombia" that litigation in Oregon would pose a hardship. Defense counsel submits an affidavit explaining that defendant would need to call a "significant number of non-party witnesses" who reside in Colombia and California. These include inspectors and persons involved in ground transportation. Defendant has failed to produce any evidence regarding any conflicts with the foreign state.

Because the goods originated in Oregon, this forum does have an interest in adjudicating the dispute and plaintiff indicates that it would rely upon Oregon witnesses and would seek a jury view of its processing facilities to establish its case. While plaintiff argues that Colombia might be an inconvenient forum, it offers no evidence to support such a claim beyond the obvious distance involved. A jury view could likely be duplicated with video exhibits.

Plaintiff also argues that Colombia might be an inefficient and/or corrupt forum. In support of its claim, plaintiff proffers an affidavit from David Thiessen, plaintiff's sales manager, who explained that prior to effecting service on defendant, he was advised (by an unnamed source) that he should first ascertain whether defendant had any ties to a drug cartel because if it did, service would be impossible. Thiessen also claims that he is generally aware of civil unrest and the assassination of judges in Colombia, but fails to identify the source of this information. Within the text of its reply, defendant moved to strike this portion of Thiessen's affidavit as unsubstantitated. Plaintiff has responded by supplementing the record with additional information regarding Colombia: (1) a State Department Travel Warning for Colombia published on November 20, 1998, cautioning U.S. citizens against unnecessary travel due to concerns about drug trade vio-

lence; and (2) a United Nations report published on March 30, 1998, which includes a brief comment on the Colombian judicial system:

"Most persons interviewed, including public authorities, shared the opinion that although Colombia is a legalistic country, with a well-structured judicial system, there is an obvious absence of the rule of law. With an impunity rate of 97 per cent (sic), as confirmed by the Procurator–General there is virtually no confidence in the functioning of the system of justice."

All of this information should have been submitted with plaintiff's response. However, I note that the drug-related violence in Colombia is nothing new—plaintiff's representatives traveled to Colombia in the fall of 1996 to initiate the contract which is now in dispute. Further, the focus of the UN report was on the impact of the drug trade on the independence of the judiciary and concerns about how to curtail violence and threats against judges from those involved in the drug trade. The report notes that the "focus" of the UN Mission to Colombia to collect data for the report was on the "regional courts," which were created specifically to try cases involving terrorism and drug trafficking crimes. While the report makes some broad statements about the judicial system as a whole, there is nothing in the report that tells the court anything directly about the state of civil litigation between parties with no connection to either drugs or terrorism. Although the travel advisory and UN report provide some cause to question the efficiency of the Colombian judicial system, where there is no evidence that either party has been involved in either the drug trade or terrorist activities, the documents fail to establish that Colombia is unavailable as an alternative forum.

### Conclusion

Weighing all of the factors, it would be unreasonable to require defendant to litigate this claim in Oregon given its limited contacts with this jurisdiction. Accordingly, I recommend that defendant's motion to dismiss this action for lack of personal jurisdiction (# 22) be GRANTED, defendant's motion to strike portions of the Thiessen affidavit (included within defendant's reply brief) should be DENIED and plaintiff's motion to change venue to Medford (# 26) should be DENIED as MOOT.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 5, 1999. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due April 19, and the review of the Findings and Recommendation will go under advisement on that date.

March 19, 1999.