Judge LaShann DeArcy Hall
The parties have filed no objections to Magistrate Judge Bulsara's December 14, 2018 Report and Recommendation on Plaintiff's motion for default judgment. The Court has reviewed the record and the Report and Recommendation for clear error and, finding none, hereby adopts Magistrate Judge Bulsara's Report and Recommendation 31 in its entirety as the opinion of this Court. Accordingly, Plaintiff's motion 18 for default judgment against Defendants Tunnel Taxi Management, LLC, Millennium Taximeter Corp., Skilman Consulting Corp., Taxopark Garage Inc., and Evgeny A. Friedman is DENIED without prejudice.
REPORT AND RECOMMENDATION
Filed 12/14/2018
SANKET J. BULSARA, United States Magistrate Judge
Jose Sanaicela Lemache ("Sanaicela") commenced this action against Tunnel Taxi Management, LLC, Millennium Taximeter Corp., Skilman Consulting Corp., Taxopark Garage Inc., Evgeny A. Friedman, and Mamed Dzhaniyev on October 17, 2017 seeking damages for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Compl., Dkt. No. 1). No Defendant appeared and the Clerk of Court entered a default *152 against all Defendants on March 12, 2018. (Entry of Default, Dkt. No. 16). Sanaicela then moved for a default judgment against all Defendants on August 15, 2018. (Mot. for Default Judgment, Dkt. No. 18).
On August 23, 2018, Attorney Raymond J. Cardinelli filed a notice of appearance on behalf of Defendant Dzhaniyev. (Notice of Appearance, Dkt. No. 22). On September 21, 2018, Sanaicela and Dzhaniyev filed a Stipulation withdrawing the motion for default judgment against Dzhaniyev only, vacating the Clerk's default against him, and extending his time to answer the Complaint. (Stipulation, Dkt. No. 24). The Court approved the Stipulation on September 27, 2018, (Stipulation and Order, Dkt. No. 25), and Dzhaniyev subsequently filed an Answer, (Dkt. No. 29).
On September 26, 2018, the motion for default judgment was referred by the Honorable LaShann DeArcy Hall to the undersigned for report and recommendation. Therefore, the Court has before it a motion for default judgment pending against several non-appearing parties, while one party, Dzhaniyev, is actively litigating. For the reasons stated below, the Court recommends that the motion for default judgment be denied without prejudice.
In Frow v. De La Vega , decided in 1872, the Supreme Court explained that in a multi-defendant case where defendants are alleged to be jointly liable, entering a default judgment runs the risk of inconsistent judgments. 82 U.S. 552, 554, 15 Wall. 552, 21 L.Ed. 60 (1872). That is, there is a risk that the defaulting party is held liable, while the non-defaulting party that litigates is found not liable. Such a result is inconsistent because joint liability requires all defendants to be liable for any one of them to be liable. Id. ("If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill."). The proper course in such a situation is to postpone decision on the default judgment until the case against the litigating party concludes; if the litigating party loses, the default judgment can then be entered against the non-appearing party, and if the litigating party wins, the default judgment motion should be denied. Id. ("[I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike-the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."); see also RSM Prod. Corp. v. Fridman , 643 F.Supp.2d 382, 414 (S.D.N.Y. 2009) ("More than 125 years ago, the Supreme Court held that when a defendant defaults in an action asserting joint liability, judgment should not be entered against the defaulting defendant until the matter has been resolved against the other defendants[.]") (quotations omitted), aff'd , 387 F. App'x 72 (2d Cir. 2010) ; Peralta v. Roros 940, Inc. , No. 11-CV-6242, 2016 WL 1389597, at *1 (E.D.N.Y. Apr. 6, 2016) (following Frow ) ("[W]hen one defendant defaults in a multi-defendant case, the district court should not enter a final decree on the merits against the defaulting defendant alone[.]"); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2690 (4th ed. 2018) ("[W]hen one of several defendants who is alleged to be jointly *153 liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.").
Frow applies to claims asserting that defendants are jointly liable. But what is joint liability? A claim is one for joint liability where "as a matter of law, no one defendant may be liable unless all defendants are liable, or ... when the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." 10 James Wm. Moore et al., Moore's Federal Practice § 55.36 (3d ed. 2018). Said differently, "[j]oint or common liability arises when a tortious act is committed by several persons acting in concert." In re Uranium Antitrust Litig. , 617 F.2d 1248, 1257 (7th Cir. 1980). Joint liability stands in contrast to independent liability-also referred to as several liability-where one defendant commits a tort "without the aid of other defendants." Id. Where there is a claim premised on joint liability, it is impossible for one defendant to be liable unless all other defendants are also liable. When one defendant defaults on a joint liability claim, entering the default judgment prematurely raises the spectre of an inconsistent judgment. Although the defaulting defendant is found liable, the other litigating defendant could subsequently be found not liable, even though the nature of the claim requires each and every defendant to be liable for any one of them to be liable.
The Frow rule-that in a multi-defendant case, a default judgment should not be entered until litigation has completed against all parties-does not apply simply because there are multiple defendants in the case. In this Circuit, "at most, Frow controls in situations where the liability of one defendant necessarily depends upon the liability of others." Int'l Controls Corp. v. Vesco , 535 F.2d 742, 746 n.4 (2d Cir. 1976).
Joint liability is distinct from "joint and several liability." What is joint and several liability? "Joint" refers to-as defined above-liability imposed on several defendants acting together. The "several" in "joint and several" liability refers to individual liability, a liability not dependent on the actions of others. In re Uranium Antitrust Litig. , 617 F.2d at 1257. A claim alleging "joint and several liability" is one where any defendant can be liable to the plaintiff in two ways: (1) regardless of whether any other defendant is liable ("several" or individual liability) or (2) where the defendant acted in concert with each and every defendant ("joint" liability). When a claim alleges joint and several liability and one defendant is found liable and other defendants are not, the two judgments are not inconsistent. That is because although the theory of "joint" liability has failed, the theory of "several" liability permits one defendant to be liable, even when the others are not. E.g., id. ("When [joint and several] liability coexist in a single claim, ... [i]f all twenty-nine of the defendants [are] found culpable of price-fixing, Westinghouse could seek to satisfy its judgment and damages award against all the defendants, or single out one price-fixer. But at the same time, only a small group of the defendants might be found to have conspired to fix the price of uranium, and the remaining defendants would be exonerated. Such a finding of liability as to nine defendants is not inconsistent with a finding of no liability as to the other twenty, because liability is potentially 'several' as well as 'joint.' ").
The present action is a FLSA case alleging a theory of joint and several liability, namely that all Defendants were joint employers of Sanaicela. That is, Sanaicela alleges that because each defendant *154 employed him, they are each jointly and severally liable for unpaid wages. A party is an "employer" under FLSA "in situations where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." Rodriguez v. Almighty Cleaning, Inc. , 784 F.Supp.2d 114, 128 (E.D.N.Y. 2011) (quotations omitted). And "an employee may simultaneously have multiple 'employers' for the purposes of determining responsibility under the FLSA." Toribio v. Abreu , No. 18-CV-1827, 2018 WL 6363925, at *3 (E.D.N.Y. Nov. 15, 2018), report and recommendation adopted , 2018 WL 6335779 (Dec. 4, 2018) ; see 29 C.F.R. § 791.2(a) ("A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act[.]"). If the Defendants are deemed to be Sanaicela's employers, they are exposed to joint and several liability. See 29 C.F.R. § 791.2(a) ("[I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act[.]"); see, e.g., Perez v. Manna 2nd Ave. LLC , No. 15-CV-4655, 2017 WL 780812, at *3 (S.D.N.Y. Feb. 28, 2017) ("[T]he defendants jointly employed the employees and are jointly and severally liable under the FLSA for any damages award.").
Because this is a theory of joint and several liability, and not joint liability, if all Defendants are not held liable, the judgments would not be inconsistent. For example, the corporate Defendants could be liable for FLSA violations, even though the individual Defendant Dzhaniyev is not because he lacked sufficient control over the corporation to be deemed Sanaicela's employer. E.g., Salinas v. Starjem Rest. Corp. , 123 F.Supp.3d 442, 465, 478 (S.D.N.Y. 2015) (declining to hold an individual defendant liable under FLSA, even when the corporate employer was found liable, because the individual lacked operational control). Several liability-liability not dependent on the acts of other defendants-contemplates such a result. As a consequence, this case does not fit neatly within Frow , since it alleges joint and several liability-not exclusively joint liability-and it is possible and consistent to hold the defaulting corporations liable even if Dzhaniyev is not.
Courts in this Circuit have routinely declined to apply Frow in cases asserting joint and several liability, and proceeded to decide the default judgment motion while other parties are litigating. See, e.g., Bleecker v. Zetian Sys., Inc. , No. 12-CV-2151, 2013 WL 5951162, at *6-7 (S.D.N.Y. Nov. 1, 2013) (deciding both liability and damages as to one defaulting defendant). Nonetheless, even if Frow is inapplicable, it does not follow that the Court should now resolve the motion for default judgment in this case. Were the Court to decide the default judgment motion, it would be in the position of calculating damages twice: first in resolving the default judgment application and then, if Dzhaniyev is found liable, at the completion of his case. This is both inefficient and potentially leads to two awards of unpaid wages that are at odds, even though it would be based on the same work performed by Sanaicela. See Viznai v. United Homes of N.Y., Inc. , No. 07-CV-4173, 2009 WL 931178, at *1 (E.D.N.Y. Apr. 3, 2009) (withholding determination of damages after *155 recognizing that courts have "consistently delayed damages inquests even where a plaintiff seeks joint and several liability in order to avoid the problems of dealing with inconsistent damage determinations") (quotations omitted). The possibility of inconsistent damages calculations leads courts in FLSA cases to refrain from issuing interim decisions when not all parties have defaulted. Gesualdi v. MMK Trucking, Inc. , No. 09-CV-1484, 2010 WL 3619569, at *5 (E.D.N.Y. Aug. 24, 2010) ("The Frow holding has been narrowed to cases involving true joint liability. Nonetheless, courts have also consistently delayed damages inquests even where a plaintiff seeks joint and several liability in order to avoid the problems of dealing with inconsistent damage determinations.") (quotations omitted), report and recommendation adopted , 2010 WL 3619719 (Sept. 9, 2010) ; see, e.g., Coley v. Vannguard Urban Improvement Ass'n , No. 12-CV-5565, 2016 WL 4179942, at *6 (E.D.N.Y. Aug. 5, 2016) (withholding the determination of damages on default judgment against non-appearing corporate defendants under FLSA and NYLL); Palma-Castillo v. New Tacolandia Inc. , No. 09-CV-10374, 2011 WL 7092652, at *2 (S.D.N.Y. May 9, 2011) (same).
There are reasons to avoid a decision on liability as well. There is simply no reason at this stage of the case to determine liability. A determination of liability against the defaulting Defendants does nothing for Sanaicela. Without a damages calculation to accompany the liability determination, no final judgment could be entered in his favor, and there could be no enforceable judgment that Sanaicela could attempt to collect. It would only be a partial resolution of the pending motion.
Moreover, no discernable prejudice accrues to Sanaicela, since resolving liability against the defaulting Defendants does not assist him in litigating the case against Dzhaniyev. He would still have to prove that Dzhaniyev himself violated FLSA by failing to pay him overtime. In other words, Sanaicela would still have to prove that Dzhaniyev employed him and Dzhaniyev violated FLSA by not paying proper wages. The allegations in the Complaint that treat Defendants collectively may be accepted as true for purposes of default judgment, (see, e.g. , Compl. ¶ 6 ("Defendants failed to maintain accurate recordkeeping of [plaintiff's] hours worked, and failed to pay Plaintiff Sanaicela the additional overtime premium for any hours worked over 40.") ), but they would not be assumed true for the purposes of litigation between Sanaicela and Dzhaniyev. Any liability determination on default is based solely on the complaint and made solely for the purpose of calculating damages. Such a liability determination has no collateral estoppel or law of the case effect on the parties who are actually appearing. Associated Int'l Ins. Co. v. Crawford , 182 F.R.D. 623, 629 (D. Colo. 1998) ("[A] default judgment, containing only the conclusions sought by plaintiff, exists, without any testing of those conclusions by trial or argument.... No preclusive rule, whether it be collateral estoppel, res judicata, or law of the case, is applicable[.]"). Sanaicela still would have to come forward with proof, i.e. something beyond the Complaint, that Dzhaniyev violated FLSA. As another court explained in a RICO action where the plaintiff attempted to use the default judgment to short-circuit the proof needed against the litigating parties, a liability determination made on default has very limited utility:
Maersk argues that the findings in the default judgments entered against the five Defaulting Defendants establish the existence of a RICO enterprise as the law of the case. Maersk's reliance on the law of the case doctrine is misplaced: the *156 law of the case doctrine only applies to issues that have actually been decided. Here, the default judgments were entered against the Defaulting Defendants for failure to respond, and in no way constitute decisions on the merits of Maersk's claims. And, while Magistrate Eaton properly accept[ed] as true all of the facts alleged ... he did so merely for purposes of determining damages. Thus, while entry of the default judgments may have presumptively established the sufficiency of Maersk's pleadings , it does not provide a basis for awarding Maersk summary judgment.
Maersk, Inc. v. Neewra, Inc. , 687 F.Supp.2d 300, 334 (S.D.N.Y. 2009) (citations and quotations omitted), aff'd sub nom. Maersk, Inc. v. Sahni , 450 F. App'x 3 (2d Cir. 2011).
The Court believes the more prudent and efficient course is to avoid decision on the default judgment motion against the non-appearing Defendants. Doing so avoids the risk of inconsistent outcomes on the question of damages. And there is no advantage or purpose served on resolving only the liability portion of the motion for default judgment. The Court, therefore, respectfully recommends the motion for default judgment be denied without prejudice to renewal upon resolution of the case against Dzhaniyev.
Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. See 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72(b)(2) ; Caidor v. Onondaga County , 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.").
Plaintiff shall serve a copy of this Report and Recommendation on all non-appearing Defendants and file proof of such service on the record.
SO ORDERED.